65 N.J. Super. 253 (1961)
167 A.2d 638
VICTOR RIVERA, PLAINTIFF-RESPONDENT,
v.
IRA GRILL AND SYLVIA GRILL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1961.
Decided January 30, 1961.
*255 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Samuel L. Marciano argued the cause for plaintiff-respondent (Messrs. Florio, Dunn, Marciano & Lypinski, attorneys).
Mr. Seymour Margulies argued the cause for defendants-appellants (Mr. Ezra L. Nolan, attorney; Messrs. Levy, Lemken & Margulies, of counsel and on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff, a tenant, recovered a judgment against his landlord for $6,000 in his suit for damages for personal injuries allegedly caused by a defective condition of the leased premises. Defendant landlord appeals.
On July 4, 1958 plaintiff and his wife were tenants occupying a third-floor apartment in premises at 153 First Street, Hoboken, N.J., owned by Sylvia Grill. (Ira Grill died in June 1958 and by consent the suit was continued against Sylvia Grill as sole defendant.)
In substance plaintiff's proofs showed that on said date he, together with members of his family and friends, went to a beach in Staten Island, New York, where they remained for about four hours during which time he drank a can and a half of beer. They then returned to plaintiff's apartment and plaintiff "laid down" to rest in one of the bedrooms while other members of the family went to the kitchen to play parchesi. One of the persons in the group attempted to open a kitchen window and, unable to do so, called plaintiff, who went into the kitchen and while trying to raise the sash put his right hand through the glass and sustained a deep laceration of his right forearm, severing arteries, nerves, and tendons.
*256 Plaintiff produced proof that the window had been in a rotted and unsafe condition for a long period of time and that despite several complaints of such condition having been made to the landlord, no repairs had been made.
Plaintiff asserted that the premises were subject to the provisions of the Tenement House Act, and in particular R.S. 55:7-1, and R.S. 55:5-11 which provide as follows:

R.S. 55:7-1.
"Every tenement house and all the parts thereof, shall be placed and maintained in good repair * * *."

R.S. 55:5-11.
"* * * sash window shall be at least three feet by five feet between stop beads and both halves shall be made so as to open readily * * *."
The alleged failure of the landlord to fulfill his statutory duty to keep the premises in repair was the basis of plaintiff's charge of negligence.
Defendant contended inter alia that plaintiff had been drinking and had deliberately pushed or punched his hand through the glass pane.
When the trial began, counsel for defendant, on behalf of his client, admitted that the building was "a tenement house in accordance with the Statute" and, at the conclusion of the trial, the court charged the jury that it had been conceded that the building was a tenement house. The court then read the specific provisions of R.S. 55:7-1 and R.S. 55:5-11, supra, and instructed the jury that these provisions imposed a statutory duty on defendant. There was no objection to the court's charge.
Defendant's appeal contends (a) there was no breach of any duty to plaintiff; (b) the defendant did not owe any duty of care with respect to known defective conditions of the premises; and (c) the trial court erred in its rulings dealing with testimony by plaintiff's wife and concerning *257 a statement about the accident alleged to have been signed by the wife.
Defendant in point (a) argues that there was no proof that the building in question was erected prior to March 25, 1904, so that the applicability of R.S. 55:5-11 was not shown. This argument is specious in view of the admission made at trial and the court's charge as to the applicability of R.S. 55:5-11, without any objection by defendant's counsel. That the sections of the act, such as R.S. 55:5-11 and R.S. 55:7-1, establish standards of conduct and impose statutory duties on tenement house owners can no longer be seriously disputed. Michaels v. Brookchester, Inc., 26 N.J. 379 (1958).
Defendant argues under (b) that in any event she did not owe any duty of care with respect to the defective conditions of the premises known to plaintiff. It is difficult to follow defendant's brief on this point because of the generalities used. We gather that defendant does not contend that knowledge by the tenant of the defective condition of a tenement house relieves the owner of the statutory duty to maintain the premises in good repair, but rather that, despite the standard of conduct imposed on defendant by the act, a tenant who has knowledge of a defective condition of the premises cases, as a matter of law, to be owed any duty as to that condition.
This contention is unsound. A tenant's knowledge of a defective condition may be pertinent to the defenses of contributory negligence and assumption of risk, as was charged in this case. However, it does not, as a matter of law, relieve a landlord of the duty owed his tenant. As was stated in Scheirek v. Izsa, 26 N.J. Super. 68, 73 (App. Div. 1953):
"Such an unqualified principle of law would in all such cases exonerate from liability landlords who through deliberate neglect and avaricious motives have subjected their dependent and hopeful tenants to their manifest dereliction of duty. The law is all right as it is. The established test of the tenant's voluntary assumption *258 of the risk is whether an ordinarily prudent person would, under the same or similar circumstances, have incurred the risk which the conduct involved. Solomon v. Finer, 115 N.J.L. 404 (Sup. Ct. 1935)."
The final point argued by defendant has this setting. At the trial plaintiff called his wife as a witness to prove that notice of the defective condition of the window had been given to the landlord some six months prior to the accident. On cross-examination defendant's counsel attempted to question her about her husband's condition just prior to the accident and about a written statement concerning the accident allegedly signed by her. The court sustained an objection that this was beyond the scope of her direct testimony and excluded the questions.
Counsel for defendant then called plaintiff's wife as his own witness and, after being warned by the court that it would not permit defendant to plead surprise at this witness' testimony, asked her what her husband's condition was just prior to the accident. When the witness replied "Perfect," counsel again attempted to interrogate her about the contents of the statement and again was precluded from doing so by the court, this time on the ground that he was not "surprised" and was impeaching his own witness.
On the basis of the foregoing defendant argues that, on the plaintiff's case, defendant's cross-examination of plaintiff's wife was improperly limited by the court and that, on the defendant's case, after producing proof that the wife had made the statement, defendant should have been permitted to interrogate her on the statement and to put it in evidence if she denied its contents. In any event, according to defendant, the statement should have been admitted at least to neutralize the wife's testimony that her husband's condition was "perfect."
We find no error in the limitation put on the cross-examination of plaintiff's wife. The scope of cross-examination is a matter for the control of the trial court which will not be interfered with in the absence of palpable mistake. *259 Palkoski v. Garcia, 32 N.J. Super. 343 (App. Div. 1954), affirmed 19 N.J. 175 (1955). What defendant attempted to do here was to elicit from the witness, on cross-examination, evidence in support of an asserted defense to the action, although the witness had not testified to anything pertinent to it on direct examination. The trial court properly limited counsel.
Defendant's argument that the written statement allegedly made by plaintiff's wife should have been admitted in evidence because the wife was available for cross-examination and the contents of the statement, if given as testimony by the wife, would have been admissible, is also invalid. Such statement was hearsay and it "is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness, and is not competent as substantive evidence of the facts to which such statements relate." Annotation, "Extrajudicial Statements By Witness," 133 A.L.R. 1454, at p. 1455 (1941). That this jurisdiction follows the foregoing rule is not open to question. State v. D'Adame, 84 N.J.L. 386 (E. & A. 1912); Goglia v. Janssen Dairy Co., 116 N.J.L. 396 (E. & A. 1936); Moon v. Lewis, 116 N.J.L. 521 (E. & A. 1936); Rhodehouse v. Director General, 95 N.J.L. 355 (Sup. Ct. 1920); Ciardella v. Parker, 10 N.J. Super. 537 (App. Div. 1950); State v. Cestone, 38 N.J. Super. 139 (App. Div. 1955).
For the same reason, the refusal of the trial court to admit the statement for the limited purpose of impeaching or discrediting plaintiff's wife, was not prejudicial to defendant because, the most that would have been accomplished by the admission of such statement, would have been the neutralizing of her testimony. There still would not have been any proof to support defendant's assertion that plaintiff had been drinking and had deliberately pushed or punched his hand through the glass pane. Moon v. Lewis, supra.
Affirmed.