84 N.J. Super. 372 (1964)
202 A.2d 208
EDITH T. SORONEN, AS ADMINISTRATRIX, AND ADMINISTRATRIX AD PROSEQUENDUM OF JOHN G. SORONEN, DECEASED, PLAINTIFF-APPELLANT,
v.
OLDE MILFORD INN, A NEW JERSEY CORPORATION, AND JAMES FREI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1964.
Decided June 30, 1964.
*374 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. William V. Breslin argued the cause for appellant (Messrs. Fornabai & Zimmermann, attorneys; Mr. Thomas J. Spinello, on the brief).
Mr. H. Curtis Meanor argued the cause for respondents (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff Edith T. Soronen, as administratrix and administratrix ad prosequendum of John G. Soronen, deceased, appeals the involuntary dismissal of her suit brought under the death by wrongful act statute, N.J.S. 2A:31-1 et seq.
John G. Soronen (decedent) while a patron in a tavern fell and struck his head against a "steel lally column" in the tavern and died of a fractured skull several hours later.
Plaintiff's contention is that decedent's fall in the tavern and untimely death were the result of his having been served liquor by the bartender, although decedent was then in an *375 actual and apparent state of intoxication. The corporate owner of the tavern and its principal stockholder, who was bartender in the tavern, were joined as parties defendant.
At the conclusion of plaintiff's presentation of evidence the trial court ruled that, assuming plaintiff's contentions stated an actionable claim, plaintiff had not presented any evidence from which a jury could reasonably find that at the time decedent entered defendant's tavern and was served drinks, his condition of intoxication would have been apparent to the bartender.
Plaintiff's theory of liability is based on Rappaport v. Nichols, 31 N.J. 188 (1959). In that case it was held that a tavern keeper may be chargeable with common law negligence if he serves alcoholic beverages to a visibly intoxicated person, who thereafter because of his intoxicated condition caused injury to a third party. Rappaport was a suit by the third party against the tavern keeper. In its opinion the Supreme Court stated (31 N.J., at page 202) that when a tavern keeper sells alcoholic beverages to an intoxicated person, the unreasonable risk of harm, not only to the intoxicated person but also to a third party, is readily foreseeable. The court also noted that in furtherance of the legislative policy enunciated in the Alcoholic Beverage Control Act, the Division of Alcoholic Beverage Control had by Regulation 20, Rule 1, provided that no licensee shall serve any alcoholic beverage to any person actually or apparently intoxicated. These restrictions, said the court, were not intended to benefit intoxicated persons alone, but also were intended for the protection of members of the general public.
While Rappaport involved a suit by a member of the general public against the tavern keeper, the opinion therein makes it clear that a tavern keeper owes a duty to a visibly intoxicated person not to serve him alcoholic beverages. As noted in the opinion, the unreasonable risk of harm to the intoxicated person himself is readily forseeable.
The duty to the visibly intoxicated persons is both common law and statutory. Intoxication is a state of impairment *376 of one's mental and physical faculties due to overindulgence in alcoholic drink. A person in that condition is unable to exercise normal powers of judgment and prudence. He is a potential menace, not only to himself but to others. Common sense requires that a tavern keeper refuse to serve alcoholic drink to such a person. This common law principle is carried into our Alcoholic Beverage Control Act which, through implementing regulations, specifically prohibits a licensee from serving alcoholic drink to a person actually and apparently intoxicated. We conclude that plaintiff's complaint sets forth a justiciable cause of action.
A similar conclusion was reached in Galvin v. Jennings, 289 F.2d 15 (3 Cir. 1961). There a patron filed suit against a tavern keeper, charging that he had been served alcoholic beverages while noticeably intoxicated and that after leaving the tavern he became involved in an automobile accident and was injured. All of the events occurred in New Jersey, so that liability was determined by New Jersey law. The Third Circuit held that the complaint alleged a cause of action under New Jersey law and within the language of the Rappaport case.
Of course, it would be incumbent upon plaintiff to establish by a preponderance of the credible evidence that the drinks served decedent in defendant's tavern were a proximate cause of decedent's fall.
Defendants in their answer, inter alia, pleaded the defense of contributory negligence on the part of decedent.
At trial the court raised the query as to whether this defense would not be an absolute bar to plaintiff's claim. Since the case will have to be retried for reasons hereinafter stated, we conclude that we should decide the availability of contributory negligence as a defense to this type of action. Such a defense, if valid, would be a bar to plaintiff's cause of action under N.J.S. 2A:31-1. Cf. Shutka v. Pennsylvania R.R. Co., 74 N.J. Super. 381 (App. Div.), certification denied 38 N.J. 183 (1962).
*377 It is defendants' contention that, absent a situation of an alcoholic, not here present, a person's overindulgence in intoxicating liquor, with resulting drunkenness, is his own voluntary act. If thereafter he falls and injures himself due to his intoxicated condition, he is necessarily guilty of contributory negligence.
We conclude that contributory negligence is not a defense to the claim here involved. The whole basis of plaintiff's cause of action is that decedent was manifestly intoxicated at the time he was served liquor in defendant's tavern. If so, the bartender knew or should have known that decedent's mental and physical faculties were impaired, that he was in no condition to exercise normal powers of judgment and prudence, and that more liquor would only make him worse.
As heretofore noted, a duty is imposed on a tavern keeper by common law and by statute not to serve liquor to an intoxicated person. This duty arises not only in the public interest but for the protection of the intoxicated person himself. The duty would be rendered meaningless to a large extent if a tavern keeper could avoid responsibility by claiming that it was the person's own fault if he drank too much. It is obvious that in the ordinary sense it is one's own fault if one gets drunk, but the postulation of the tavern owner's duty in such a situation assumes implicitly that there has been such fault on the part of the drinker and nevertheless imposes the protective duty.
In Schelin v. Goldberg, 188 Pa. Super. 341, 146 A.2d 648 (Super. Ct. 1958), plaintiff, a patron in defendant's tavern, was served liquor while manifestly intoxicated. Thereafter he got into an altercation in the tavern with another patron and was injured. The court not only held that plaintiff had a common law cause of action against the tavern keeper, but also ruled that he could not be chargeable with contributory negligence in accepting and consuming the liquor. In ruling out contributory negligence as a defense, the court noted section 493 of the Pennsylvania Liquor Code of 1951, 47 P.S. § 4-493, which made it unlawful to sell, furnish or give any *378 liquor to a visibly intoxicated person. Holding that the statute was for the protection of the intoxicated person as well as the general public, the court then applied the principle of law set forth in Restatement of Torts, section 483, which provides that
"If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute."
We find the Restatement principle applicable to the instant case, since in effect defendants are charged with violation of a regulation promulgated by the Director of Alcoholic Beverage Control under our State Liquor Act. Cino v. Driscoll, 130 N.J.L. 535 (Sup. Ct. 1943). However, even aside from the Restatement principle, we conclude, as heretofore noted, that the very nature of plaintiff's common law cause of action and of defendants' duty is such as to preclude the defense of contributory negligence.
We now consider whether plaintiff's proofs were insufficient as a matter of law. The evidence produced by plaintiff may be summarized as follows.
Decedent's wife testified that she saw decedent at home at about 9:30 in the morning, and that before he left the house he took "a couple of slugs" out of a pint bottle of whiskey which he had in his pocket. He was not intoxicated at the time.
Frank G. Schutte testified that he was a patron at defendant's tavern on the day in question. He saw decedent sitting at the bar, saw him stand up, and then heard a loud noise as decedent fell and struck his head. He did not actually see decedent fall. He had seen decedent earlier that day, at about 8:30 A.M., in another tavern. On cross-examination, and over objection of plaintiff's attorney, the witness testified that he spoke with decedent in defendant's tavern and that decedent sat quietly, was not boisterous or loud, and appeared normal.
*379 Stanley Yereance, another patron in the tavern on the day in question, testified that he first saw decedent outside the tavern and later saw him in the tavern. Decedent was seated on a stool at the bar. He saw decedent get up from the stool, but did not actually see him fall. He heard a thump and saw decedent lying on his back with his head against the pole. On cross-examination, and over objection of plaintiff's attorney, the witness testified that he had a conversation with decedent outside the tavern and that decedent acted "like any other human being."
James V. Rittgers, a police officer, testified that he responded to a call at about 3:04 P.M., and found decedent lying on the floor of the tavern, bleeding profusely from the head. He called for a doctor, who arrived at about 3:09 P.M., and an ambulance, which arrived at about 3:11 P.M. Decedent was removed to the hospital. The officer took a statement from the bartender that decedent was in the tavern about an hour prior to his fall and while there was served "three beers and two shots."
The assistant county physician testified that he examined decedent's body about 10 to 12 hours after death and found that decedent died of a skull fracture with intercranial hemorrhage. He added the words "acute alcoholism" as a cause of death on the death certificate because of the strong odor of alcohol from the body. On cross-examination he said that he could not tell whether decedent had been intoxicated and that his conclusion of acute alcoholism was based solely on the smell of alcohol and not corroborated by any finding of a medical nature.
Plaintiff's principal witness was Dr. Edwin Frieman, who had been summoned to the tavern to render aid to decedent. He testified that he received a call about 3 P.M., and arrived at the tavern within five minutes. He found decedent lying on the floor with his head towards the pole. He was bleeding from the ears and there was "a tremendous odor of alcohol from the patient and * * * his reflexes were actually almost nonexistent." It was the doctor's judgment that *380 decedent was in a condition of acute alcoholism, and for decedent's reflexes to be that dull he would have had to have been under the influence of alcohol for a couple of hours. The doctor testified that the odor of alcohol was strong right until decedent died several hours later; "he must have really been as the expression goes, loaded." He was quite certain, medically speaking, that this condition existed for at least two hours prior to his seeing decedent at the tavern at 3 P.M. It was the doctor's opinion that decedent died of a skull fracture and intercranial hemorrhage, with acute alcoholism as a contributory factor.
On cross-examination Dr. Frieman insisted that decedent's fall and skull fracture could not have caused the reflex condition he found because of the time factor. When he examined decedent his reflexes were dulled to such an extent that in his opinion the onset thereof must have been several hours prior thereto.
The trial judge noted that the doctor had given a medical opinion as to decedent's condition for at least two hours prior to his fall. The court characterized this opinion as a theory or hypothesis which must be consistent with the other proof in plaintiff's case. The court then reviewed the testimony of the witnesses Schutte and Yereance as to decedent's normal condition and behavior prior to his fall and concluded that this evidence was a complete repudiation of the doctor's theory. The court therefore concluded that there was no credible evidence of liability to submit to the jury.
Plaintiff charges that there was sufficient credible evidence of decedent's actual and apparent intoxication to have required submission of the question to the jury. Plaintiff also argues that the trial court erred in allowing the witnesses Schutte and Yereance, on cross-examination and over plaintiff's objection, to testify to decedent's manner and appearance prior to his fall, since on direct examination they had not been asked anything relating to decedent's manner and appearance. Plaintiff points out the critical importance of the cross-examination testimony to the trial court's ruling.
*381 The scope of cross-examination is a matter for the control of the trial court. An appellate court will not interfere with such control unless clear error and prejudice is shown. Rivera v. Grill, 65 N.J. Super. 253 (App. Div. 1961), certification denied 34 N.J. 471 (1961).
In the instant case we think that the trial court might well have sustained the objections to the testimony in question. Schutte and Yereance were not parties to the suit. Plaintiff had called them only to establish decedent's presence in the tavern and his fall while there. They were not asked anything about decedent's manner and appearance. Concededly, the testimony as to decedent's manner and appearance was relevant. However, it was beyond the scope of direct examination and related to an asserted defense. As was stated in Rivera v. Grill:
"What defendant attempted to do here was to elicit from the witness, on cross-examination, evidence in support of an asserted defense to the action, although the witness had not testified to anything pertinent to it on direct examination. The trial court properly limited counsel." (65 N.J. Super., at p. 259, 167 A.2d, at p. 641)
However, even considering this testimony as properly a part of plaintiff's case, we find a jury issue as to decedent's actual and apparent intoxication was presented.
The thrust of Dr. Frieman's testimony went beyond a medical opinion that decedent was intoxicated at the time he fell. The doctor described decedent's condition as a state of acute alcoholism with reflexes so dulled that he must have been "loaded" for at least two hours prior to the time the doctor first saw him. If the doctor's testimony is accepted, then decedent was in a state of acute alcoholism during the entire time he was in defendant's tavern, and it is rationally inferable that in the course of the one hour that he was there the bartender was aware or should have been aware of decedent's condition.
The testimony of the witnesses Schutte and Yereance, if believed, tended to contradict the doctor's opinion. However, *382 it was for the jury to decide from the evidence what the fact was. It did not have to believe Schutte and Yereance. Indeed, the proof showed that Yereance was a tenant of the individual defendant, occupying living quarters over the tavern.
We conclude that there was sufficient credible evidence of decedent's actual and apparent intoxication while in defendant's tavern to make out a jury question.
Reversed and remanded for a new trial.