FOURNET, Chief Justice.
We granted a writ of certiorari[1] on plaintiff’s application in order that we might review the judgment of the Court of Appeal for the Second Circuit affirming the judgment of the trial court dismissing, on defendants’ peremptory exception of no *985 cause of action[2] (based on allegations of the petition assertedly disclosing plaintiff contributed to his own injury), his suit to recover damages from the defendant nightclub owner and the owner’s insured for injuries sustained when he was hit on the highway by a moving vehicle after having been ejected from the nightclub adjacent to the highway in an intoxicated condition. See, 175 So.2d 381.
The operative facts giving rise to the cause of action as set out in plaintiff’s petition are succinctly summarized in his counsels’ brief in this court as follows:
“On the afternoon of June 27, 1963, relator and friends arrived in Shreveport, Louisiana, for both business and pleasure. At about 9:00 o’clock p. m., they went to Sak’s.[3] Upon his arrival, relator was ‘under the influence of liquor,’ having previously ‘imbibed some alchoholic beverage;’ however, ‘he was not drunk, but to the contrary, was rational and in control of his faculties.’ From 9:00 o’clock p. m. until 1:00 o’clock a. m. relator was repeatedly ‘coaxed to drink and plied with drinks by employees of Sak’s,’ until he became so intoxicated that ‘he could barely walk, falling down a number of times.’ This coaxing and plying continued in spite of Sak’s employees’ knowledge and awareness of relator’s helplessness and befuddlement, until the number of drinks consumed reached somewhere between 30 and 40.
“When it came time for Sak’s to close (around 1:30 o’clock a. m.), relator ‘was required to leave the building of Sak’s’ and he was ‘turned out on its premises adjacent to Highway 80.’ This was done by the employees of Sak’s notwithstanding their full awareness of ‘his inability to look after himself.’ Immediately following this ejectment relator wandered into Highway 80, where ‘on account of his helplessness’ and his inability to ‘take account of traffic,’ he was run down by a vehicle travelling thereon.”
In the alternative, plaintiff invokes the last clear chance doctrine based on the following allegations as summarized in brief, and which are asserted to be the heart of relator’s cause:
“ * * * shortly after 9:00 o’clock p. m. a point in his intoxication was reached when the employees of Sak’s were ‘well aware of his condition and knew that continued drinking was deleterious and harm *987 ful’ to him. He continues by alleging that had Sak’s employees desisted in their negligence at that time, which it was their duty to do, relator ‘would have regained his faculties’ prior to the time he was ejected; that is, between then (9:30 p. m.) and the time he was ejected (1:30 a. m.), he would have sobered up sufficiently to exercise self-protective care.”
The rule of law universally obtaining, and controlling under our jurisprudence,[4] is succinctly set out in Corpus Juris Secundum as follows:
“At common law, and apart from statute,[5] no redress exists against persons selling, giving, or furnishing intoxicating liquor, or their sureties, for resulting injuries or damages due to the acts of intoxicated persons, whether on the theory that the dispensing of the liquor constitutes a direct wrong or constitutes actionable negligence * * *. This rule is based on the theory that the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it.” 48 C.J.S. Intoxicating Liquors § 430, p. 716. See, also, 65 C.J.S. Negligence § 143, p. 784; 30 Am.Jur. 824, Intoxicating Liquors, Section 525; 54 A.L.R.2d 1152.
However, counsel for plaintiff contend that Louisiana, by the adoption of R.S. 26:88,[6] abrogated this common law rule and created, by implication, a right to recover civil damages in those persons intended to be protected thereunder irrespective of the defense of contributory negligence, as such statutes have, in other states, been interpreted in the light of Sections 285, 286, and 483 of the Restatement of the Law o'f Torts, Second Edition,[7] and it is clear *989 thereunder that R.S. 26 :88 was intended to protect not only the public, but an incompetent, such as an intoxicated person, against his own incompetency.
An exhaustive research of all of the cases on this subject, including those relied on by plaintiff,[8] reflects the law to be as hereinabove stated, and from our appreciation of the legislative intent in adopting Act 360 of 1948, on which Title 26 of the Revised Statutes, is predicated, we cannot say this body thereby abrogated the common law in this respect and created, by implication, a right to recover civil damages in those persons not entitled to recover such damages under the common law, as has been done by a number of the states, among whom are, in particular, those now or formerly having civil damage or “dramshop” statutes,[9] and upon whose jurisprudence in *991 this respect plaintiff’s counsel largely rely.[10]
As was very aptly pointed out by Prosser in his work on torts, whether contributory negligence “ * * * is a bar to the liability of a defendant who has violated a statutory duty is a matter of the legislative purpose which the court finds in the statute. If it is found to be intended merely to establish a standard of ordinary care for the protection of the plaintiff against a risk, his contributory negligence with respect to that risk will bar his action, as in the case of common law negligence.” Section 64, page 435, of the Third Edition.
Louisiana has never had on its statute books a civil damage or “dramshop” act, and has never adopted a code based on the American Law Institute’s model Restatement of the Law of Torts. Article 26:88 of the Revised Statutes is criminal in nature, levying a fine and/or imprisonment for its violation, although it does specifically provide that violation of the acts therein prohibited shall be ground for the suspension and revocation of permits, as does R.S. 26.89 also, which is headed: “Additional causes for suspension or revocation of permits.” For us to hold that R.S. 26:88, by implication, abrogates the common law on this subject, as contended by counsel representing the plaintiff, would require us to exercise legislative prerogatives which, under our state and national constitutions, the judiciary is prohibited from doing. See, Ramsey v. Anctil, 106 N.H. 375, 211 A. 2d 900, decided in July 1965 in New Hampshire.
Had the legislature intended this result by the adoption of its Act 360 of 1948 and R.S. 26:88, it could have said so in a few plain and simple words. Our conclusion that such a result was not intended is fortified by the fact that although there have been for 'a number of years decisions at the appellate court level invoking and following the common law in this respect, although this court has heretofore had no case in point presented to it, the legislature, although meeting with regularity since *993 these decisions, has taken no steps to adopt clarifying legislation or require this extraordinary care of intoxicated persons frequenting public places selling and dispensing alcoholic beverages. See, McAllister v. Travelers Ins. Co., La.App., 121 So.2d 283; Robinson v. Fidelity & Casualty Co., 135 So.2d 607, certiorari denied by us; Manuel v. United States Fire Ins. Co., La. App., 140 So.2d 702. See, also, for an excellent exposition of the law in this respect the landmark case of Cole v. Rush, 45 Cal. 2d 345, 289 P.2d 450, 54 A.L.R.2d 1137.
A mere reading of the cases relied on by plaintiff[11] as the basis for invoking the doctrine of last clear chance, designed to protect persons who negligently place themselves in a position of peril or danger, easily reflects they are inapplicable to the facts of this case, and, therefore, not controlling, as this doctrine can be invoked only where the person inflicting the injury for which damages are sought (1) actually discovered the peril of the injured party or was in a position to discover it, and (2) could, at that time, have avoided the accident by the exercise of ordinary or reasonable care. See, the annotation at 26 A.L.R.2d 308.
For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reinstated and made the judgment of this court.

. 248 La. 120, 176 So.2d 451.

. Sections 922, 923, and 927 of the Louisiana Code of Civil Procedure.

. As pointed out in the brief, Sak’s Lounge is alleged to be a tavern in Bossier City, Louisiana, offering late evening entertainment which is built mainly around the sale of intoxicating liquors, and where female waitresses are employed for the specific purpose of coaxing customers to buy and imbibe liquors. It is situated immediately adjacent to U. S. Highway 80, a four-laned transcontinental route which is heavily travelled by rapidly moving vehicular traffic, and which is the sole means of egress from Sak’s.

. In interpreting and carrying out the purposes of our basic law as set out in Article 2315 of the R.C.C., Louisiana has followed the common law in tort cases.

. It seems some 29 states have had civil damage or “dramshop” acts on their books, i. e., Arkansas, Colorado, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, “Washington, “West Virginia, and Wisconsin. See, Cole v. Rush, 45 Cal.2d 345, 289 P.2d 450, 54 A.L.R.2d 1137. Although many of these have been repealed, the substance of the jurisprudence is retained in some states, with great reliance being placed on Section 483 of the Restatement of the Law of Torts, or provisions in alcohol control laws are interpreted in the light of this jurisprudence and the restatement. See, Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648. Other states hold the repeal of these statutes results in a return to the common law rules. See, Ramsey v. Anctil, 106 N.H. 375, 211 A.2d 900.

. The' pertinent portion of R.S. 26:88 is: “No person holding a retail dealer’s permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises: * * * (2) Sell or serve alcoholic beverages to any intoxicated person.”

. Section 285 provides the standard of conduct of a reasonadle man may be established by legislative or regulatory- *989 provisions, by judicial interpretation of such provisions, by judicial decision, or by judge or jury application of facts in a given case. The pertinent portion of Section 286 provides courts may adopt as the standard of conduct of a reasonable man the requirement of legislative or regulatory provisions “to protect a class of persons which includes the one whose interest is invaded.” Section 483 provides: “The plaintiff’s contributory negligence bars his recovery for the negligence of the defendant consisting of the violation of a statute, unless the effect of the statute is to place the entire responsibility for such harm as occurred upon the defendant.”

. The authorities cited on this point are: Schelin v. Goldberg, 188 Pa.Super. 341, 146 A.2d 648; Smith v. Clark, 411 Pa. 142, 190 A.2d 441; Jardine v. Upper Darby Lodge No. 1973, Inc., 413 Pa. 626, 198 A.2d 550; Soronen v. Olde Milford Inn, 84 N.J.Super. 372, 202 A.2d 208; Galvin v. Jennings, 3 Cir., 289 F.2d 15, applying New Jersey law; Waynick v. Chicago’s Last Dept. Store, 7 Cir., 269 F.2d 322, 77 A.L.R.2d 1260; and Davis v. Shiappacossee, 155 So.2d 365.

. In brief counsel state the authorities relied on are not from states having civil damage or “dramshop” acts, yet a reference to them, as pointed out in the previous footnote, reveals the first 4 are from Pennsylvania, the next 2 from New Jersey, and the next arose in the federal courts in Illinois, for an accident oceurring in Michigan, all of these states being among those listed in Footnote No. 5 and there discussed. In this .last case, the federal court, finding a vacuum existed because the Illinois “dramshop” act could not apply to an accident occurring in Michigan, and the Michigan alcohol control law could not apply to a sale made in Illinois, stepped into the vacuum to rule in favor of third persons injured by intoxicants in Michigan, where the accident occurred, purportedly under existing Michigan common law, although it relied heavily on the Illinois “dramshop” act to establish the sale to the intoxicants was urSawful and plaintiffs, as third persons, were part of the general public intended to be protected thereunder. The last case cited (Davis v. Shiappacossee) is from Florida, which has no such statutes. However, the decision rests on the fact a dealer sold beer and whiskey to an immature minor while he was sitting with two teenage friends in a car, likened by the court to a dangerous instrumentality, on the basis of a previous holding that a minor, to whom firearms were sold contrary to law, could recover for injury sustained when the gun was accidently discharged. But see the later ease of Reed v. Black Caesar’s Forge Gourmet Rest. Inc., Fla.App., 165 So.2d 787, also from Florida, in which recovery was denied for the death of an adult stemming from the sale[1] of liquor to him, the common law being followed. States following the common law generally make a dis *991 tmction between minors and adults in this field.

. Creating rights never arising under common law, civil damage and “dram-shop” acts must cover the party seeking redress unless a more liberal view is applied under Section 483 of the Restatement of the Law of Torts. The consumer of liquor is, therefore, usually excluded, rights of action being given to third persons injured by the intoxicant, or to the intoxicant’s surviving widow and children. See, 48 C.J.S. Intoxicating Liquors, p. 718, beginning with § 431. As pointed out in Footnote No. 5, states where these laws have been repealed usually interpret the recent alcohol control laws in the light of the jurisprudence thereunder, or simply follow that jurisprudence. Others hold repeal of such statutes revives the common law rules with respect to contributory negligence. Many cases refer to the split of authority in holdings in the field, but fail to point out the split stems from these statutory provisions.

. In Jackson v. Cook, 189 La. 860, 181 So. 195, damages were sought by a plaintiff who, walking along the road in an obviously intoxicated condition, was hit by a motorist on the highway, this court holding it is the “first duty of those who operate engines or motor vehicles * * * to keep a sharp lookout ahead to discover the presence of those who might be in danger.” In the instant ease this law would apply to the motorist on the highway who actually struck the plaintiff. In Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485, a deaf man walking along a railroad track was struck from behind by a train, the decision resting on the fact that although the trainmen saw decedent in time to stop, and also saw he was unmindful of the approaching train, they did nothing to prevent the tragedy until too late to effectively stop. In McClean v. University Club, 327 Mass. 68, 97 N.E.2d 174, a guest sued the innkeeper for obligations arising under contract, as well as tort, for eviction prior to expiration time for which a room was rented, and who was in an obviously ill condition at the time he was made to leave. The doctrine of last clear chance was neither raised nor mentioned, the decision being based on the contract..

. This holding is implied by the majority’s consideration and rejection of the doctrine of Last Clear Chance. That doctrine becomes pertinent only after a finding of contributory negligence.