HUGHES, J.
 

 12This appeal raises the issue whether a bar owner/employer of a bartender who drinks while on the job, with the owner/employer’s knowledge and consent, can be held liable to a third party for injuries sustained as a result of a pedestrian/auto accident in which the third party was struck and seriously injured by the intoxicated bartender/employee as she was driving someone home after closing the bar.
 

 The trial court rendered summary judgment in favor of the defendant/bar owner, A & D Louviere, Inc. d/b/a Vista Lounge (hereinafter referred to interchangeably as “A & D,” “employer,” or “owner”), finding it to be free from any and all liability for the injuries sustained by the plaintiff, Hu-bie Aucoin, and dismissing all of his claims. Mr. Aucoin appeals. For the following reasons, we affirm.
 

 FACTUAL BACKGROUND
 

 The accident occurred at approximately 1:00 a.m. on September 12, 2004, in the eastbound lane of Louisiana Highway 182 in the Parish of St. Mary, when the Honda Accord belonging to and being driven by Teisha N. Rochel struck Hubie Aucoin, a pedestrian. The petition alleges that Mr. Aucoin was walking on the shoulder of the road and Ms. Rochel drove her vehicle onto the shoulder and struck him. (The deposition testimony of Ms. Rochel introduced in support of the motion for summary judgment includes contrary assertions: Mr. Aucoin was walking in the middle of the eastbound lane of the highway and Ms. Rochel never left her lane of travel nor did she see Mr. Aucoin until after her vehicle struck him.) It is undisputed that Ms. Rochel had been drinking earlier that night while working at the Vista Lounge and that she was arrested and charged with driving while intoxicated following the accident.
 

 13Prior to the accident, Ms. Rochel had worked her shift at the Vista Lounge, starting at approximately six in the evening and ending when she closed the bar, which she estimated was around midnight. She admitted that she had been drinking throughout her shift, a common practice that was sanctioned by the owner/employer with the only limitations being that full price be paid for the drinks and that the employee not get intoxicated so that his/ her ability to count the money at the end of the shift and close the bar would not be compromised.
 

 Also prior to the accident, after closing the bar, Ms. Rochel performed her final job duty of the night for her employer, which was to drop the money bag through the mail slot in the front door of the employer’s home, located a few miles west from the Vista Lounge, right off of Highway 182.
 

 After dropping off the money bag, instead of proceeding her usual route, five more miles further westbound on Hwy. 182, to get home, Ms. Rochel proceeded easterly again, passing up the Vista Lounge in route to bring home a friend, Wayne Lagarde. Mr. Lagarde was a frequent patron and had been in and out of the Vista Lounge throughout the night and needed a ride home. However, before Ms. Rochel reached Lagarde’s home, her vehicle struck Mr. Aucoin.
 

 
 *199
 
 PROCEDURAL BACKGROUND
 

 Mr. Aucoin filed this lawsuit seeking to recover damages for the injuries he sustained as a result of being struck by the bartender/employee’s vehicle.
 
 [1]
 
 The petition named as defendant, among others,
 
 [2]
 
 A & D Louviere, Inc., d/b/a Vista Lounge, as owner/employer, and its liability insurer. Mr. |4Aucoin alleged that Ms. Rochel was employed by, and in the course and scope of her employment with, the owner when the accident occurred; thus any acts of negligence attributed to her, including driving her vehicle while intoxicated, would be imputed to the employer with the application of vicarious liability. Mr. Aucoin further alleged that the owner was guilty of its own acts of negligence in allowing and encouraging its employee to consume alcohol while working, while also requiring her to drive to the owner’s house and deliver the lounge’s cash profits after closing down the bar.
 

 A & D filed a motion for summary judgment asserting that the list of undisputed material facts submitted together with the depositions presented in support thereof establish that Ms. Rochel was not in the course and scope of her employment and therefore plaintiff lacked factual support for that essential element of his cause of action in vicarious liability. Additionally, A & D asserted it is entitled to the immunity provided by La. R.S. 9:2800.1(A) and (B), Louisiana’s “anti-dram shop” statute, to bar owners and social hosts who serve alcohol.
 
 [3]
 

 STANDARD OF REVIEW
 

 The trial court without specifically addressing the applicability of La. R.S. 9:2800.1, granted the summary judgment in favor of the bar owner, specifically finding that the bartender was on a personal mission to bring a |fifriend home, and no longer within the course and scope of her employment at the time of the accident. An appellate court reviews the district court’s decision to grant or deny a motion for summary judgment
 
 de novo
 
 using the same criteria that govern the trial court’s consideration of whether summary judg-
 
 *200
 
 merit is appropriate.
 
 Boudreaux v. Vankerkhove,
 
 07-2555, p. 5 (La.App. 1st Cir.8/11/08), 993 So.2d 725, 729-730. Accordingly, we review the record
 
 de novo
 
 to determine whether the immunity provided in La. R.S. 9:2800.1(B) is applicable to insulate the employer for its own acts of alleged negligence, and to decide the merits of summary judgment regarding the alleged vicarious liability of A & D for the acts of its employee, Ms. Rochel.
 

 SUMMARY JUDGMENT
 

 A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and shall be construed “to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966(A)(2).
 

 The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party’s claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. |
 
 (Darryl Samaha, Husband of/and Karman Samaha v. David J. Rau, M.D.,
 
 07-1726, p. 5 (La.2/26/08), 977 So.2d 880, 883. Plaintiff may not rest on mere allegations or denials, but must set forth specific facts that show that a genuine issue of facts remains. If the plaintiff fails to meet this burden, there is no genuine issue of material fact and the defendant is entitled to summary judgment as a matter of law.
 
 Board of Supervisors of Louisiana State University v. Louisiana Agr. Finance Authority,
 
 07-0107, p. 9 (La.App. 1st Cir.2/8/08), 984 So.2d 72, 79-80.
 

 APPLICABLITY OF LOUISIANA’S ANTI-DRAM SHOP STATUTE
 

 The issue of the applicability of statutory immunity in this case pertains to the cause of action asserted against the bar owner for its own acts of negligence that allegedly contributed to the accident.'
 
 [4]
 
 After a thorough review of the statute, its history, purpose, and application, the relevant jurisprudence, and the facts of this case, we find that A & D is entitled to the immunity provided in La. R.S. 9:2800.1.
 

 Prior to 1986, Louisiana did not have a “dramshop” law, and the imposition of liability on a seller of alcoholic beverages for damages sustained or caused by an intoxicated patron was determined by the application of general negligence principles (duty-risk analysis) under the “reasonable man” standard.
 
 Gresham v. Davenport,
 
 537 So.2d 1144, 1148 (La.1989). Louisiana jurisprudence consistently opposed the application of absolute liability on an alcoholic beverage retailer for the consequences of a patron’s intoxication.
 
 See Thrasher v. Leggett,
 
 373 So.2d 494 (La.1979),
 
 superseded by statute as stated in Godfrey v. Boston Old Colony Ins. Co.,
 
 97-2568 (La.App. 4th Cir.5/27/98), 718 So.2d 441,
 
 writ denied,
 
 98-2487 (La.11/20/98), 729 So.2d
 
 *201
 
 563. Applying the duty-risk analysis, some courts found no liability on the part of defendants, generally on the basis that “it is the consumption of the alcohol and not the sale of it which is the proximate cause of the ensuing harm.”
 
 Lee v. Peerless,
 
 248 La. 982, 183 So.2d 328 (1966). The reasoning underlying that analysis is that the person who voluntarily engages in drinking has the most proximate opportunity to avoid the effects of intoxication by desisting from drinking or from drinking to excess.
 
 Thrasher,
 
 373 So.2d at 497. (Notably, this reasoning was codified as the stated purpose and goal of the currently enacted statute, discussed fully below.) Other cases imposed liability under general negligence principles, based on a finding that the business owner breached a duty it owes to the general public to avoid affirmative acts that increase the risk of peril to an intoxicated person, such as ejecting an intoxicated patron from the bar located adjacent to a busy highway, as occurred in
 
 Pence v. Ketchum,
 
 326 So.2d 831 (La.1976), overruled by Thrasher,
 
 [5]
 

 supra.
 

 In 1986, the Louisiana Legislature enacted La. R.S. 9:2800.1, entitled “Limitation of Liability for loss connected with sale, serving, or furnishing of alcoholic beverages,” with the express purpose of placing the responsibility for consequences of intoxication on the intoxicated person, rather than the server of the alcohol.
 
 Berg v. Zummo,
 
 2000-1699, p. 8 (La.4/25/01), 786 So.2d 708, 713-14. Subsection (A) of La. R.S. 9:2800.1 provides specifically that “the
 
 consumption
 
 of intoxicating beverages, rather than the sale or serving or furnishing of such beverages
 
 is the proximate cause of any injury, ...
 
 inflicted by an intoxicated person upon himself or |supon another person.” (Emphasis added.) In furtherance of this stated goal, subsection (B) of La. R.S. 9:2800.1 provides immunity to “vendors of alcoholic beverages who sell or serve alcohol to persons over the age for the lawful purpose thereof.”
 
 [6]
 
 Subsection (D) of the statute further specifies that “the insurer of
 
 the intoxicated person
 
 shall be primarily liable with respect to injuries suffered by third persons.” (Emphasis added).
 

 The only exceptions to the limitation of liability expressly provided by the statute are when alcoholic beverages sold or served to minors (by omission under subsection (B)) and to any person who causes or contributes to the consumption of alcoholic beverages
 
 by force or by falsely representing
 
 that a beverage contains no alcohol. La. R.S. 9:2800.1(E). (Emphasis added.)
 

 Employers are not expressly excluded from the immunity and the jurisprudence does not reflect any such interpretation of the statute. In
 
 Alvarenga v. Mills,
 
 01-
 
 *202
 
 0872 (La.App. 4th Cir.5/10/02), 818 So.2d 1017,
 
 unit denied,
 
 02-1610 (La.9/30/02), 825 So.2d 1197, a motorist involved in a collision with an intoxicated nightclub
 
 employee
 
 filed suit against the nightclub owner based on allegations that the employee became intoxicated there on the night of the collision. In that case, there was no separate claim in vicarious liability, because the plaintiff conceded that the employee, who was on his way home from the nightclub, was not in the course and scope of his employment at the time of the accident. The plaintiffs claims were based solely on the fact that the employee became intoxicated at his employer’s place of business. The fourth circuit found that the nightclub |flwas immune based on the clear language of the statute.
 
 Id.,
 
 at p. 3, 818 So.2d at 1019. The plaintiff made the same argument that Mr. Aucoin makes in the case before us, discussed below, that notwithstanding the clear language of the statute, the nightclub owner still can be held liable for taking an affirmative act that increased the peril from its employee’s intoxication. The fourth circuit rejected that argument, noting that the only thing the nightclub owner did was to serve the employee the alcohol that intoxicated him and held that “under such circumstances, La. R.S. 9:2800.1 does not allow the imposition or liability.”
 
 Id.
 
 This circuit also has addressed the applicability of the La. R.S. 9:2800.1 immunity to an employer who served alcoholic beverages to an employee, who was not working at the time that he was served alcohol and became intoxicated. In
 
 Bourgeois v. Puglisi,
 
 615 So.2d 1047 (La.App. 1st Cir.3/5/93), the intoxicated person worked offshore and did some maintenance work for the owner at the lounge two to three afternoons a week when he was not offshore. At the time that the employee became intoxicated and subsequently caused injury to a third party, he was not working for the owner of the lounge, but was there as a patron. In determining the owner’s liability in light of the immunity statute, this court reviewed the history of the statute and the jurisprudence both before and after its enactment. We noted that even prior to the enactment of the statute, when general negligence principles and the duty-risk analysis were employed, the duty owed by
 
 an employer
 
 to an inebriated
 
 employee
 
 was found to be the same as that owed by a tavern owner to an inebriated patron, i.e., to avoid affirmative acts which increase the risk of peril.
 
 Id.,
 
 at p. 1048-49. We further noted that the same duty applied even when the | ^employer furnished alcohol to the employee at an event sponsored solely for the benefit of the employer’s business.
 
 Id.,
 
 at p. 1049. We recognized the legislative intent in enacting the statute was to retain the prior jurisprudence that held that the consumption of alcohol, not the selling or serving of alcohol, was the legal cause of an alcohol related injury, and found that the bar owner/employer’s duty to its employee did not include within the ambit of its protection the risk that its intoxicated employee would injure a third party off the premises.
 
 Id.,
 
 at p. 1049. We further noted in dicta the lack of authority for the argument that an employer is excepted from the statutorily provided immunity:
 

 Plaintiff has cited no authority and we have found none which would except the employer from the limitation of liability pursuant to La. R.S. 9:2800.1 and the policy decision to hold the consumer of alcoholic beverages responsible for injuries and damages caused by the intoxicated person.
 

 Id.,
 
 at p. 1049;
 
 see also, Phipps v. Bruno Construction,
 
 2000-0480 (La.App. 3rd Cir.11/2/00), 773 So.2d 826 (which applies the same reasoning and analysis employed by this court in
 
 Bourgeois, supra,
 
 in the context of a worker’s compensation claim
 
 *203
 
 for injuries sustained by an intoxicated employee.)
 

 In this case, Mr. Aucoin argues that notwithstanding the clear wording of the statute, the pre-statute reasoning of
 
 Thrasher v. Legget
 
 should apply to impose liability when the bar owner takes affirmative action that increases the peril of an intoxicated patron. As did the plaintiff in the aforementioned
 
 Alvarenga
 
 case, Mr. Aucoin relies on dicta by the Louisiana Supreme Court in a footnote in a case that involved an intoxicated minor clearly outside the scope of immunity provided by the statute. In
 
 Berg v. Zummo,
 
 2000-1699, p. 8, n. 8 (La.4/25/01), 786 So.2d 708, 713-14, n. 3, the supreme court stated, “[t]his [cjourt has never addressed, nor do we address today, whether the bar h,owner can be liable in spite of La. R.S. 9:2800.1 for taking an affirmative act which increases the peril to an intoxicated
 
 adult
 
 patron under the pre-La. R.S. 9:2800.1 reasoning of
 
 Thrasher v. Leggett.”
 
 Relying on this comment, Mr. Aucoin argues that A & D’s practice of allowing and encouraging its employees to consume alcoholic beverages while working at the bar, knowing that the employees would in all likelihood be driving a vehicle after closing the bar to fulfill the job duty of dropping off the cash to the owner, is affirmative action on the part of the owner that increased the perils of the intoxicated employee’s actions and for which he can be held liable notwithstanding the immunity provision of the statute.
 

 First, as noted above, the comment Mr. Aucoin relies on is not only dicta, but it merely leaves open the possibility of the issue being raised, and specifically indicates no opinion either way. Additionally, the statutory language is clear and unambiguous, leaving no room for interpretation beyond the ordinary meaning of the words employed. Moreover, the statute itself provides exceptions, which do not include affirmative acts by the bar owner that may increase the peril of an intoxicated patron. In
 
 Zapata v. Cormier,
 
 02-1801 (La.App. 1st Cir.6/27/03), 858 So.2d 601, this court, applying the clear language of La. R.S. 9:2800.1, held that several requirements must be met for the statutory immunity to apply: (1) the bar owner must hold the appropriate permit; (2) the bar owner or its agents, servants or employees sell or serve alcohol to a person over the age for the lawful purchase thereof; (3) the purchaser suffers or causes injury off the premises; (4) the injuries were caused by the intoxication of the person to whom the alcohol was served. Finding all four requirements had been met, we held the immunity provided by the statute applied and the bar owner could not be held liable.
 

 | l2Likewise, we hold that the clear language of the statute provides immunity to A & D for the injuries caused by the intoxification of Ms. Rochel when the only act committed by the bartender was serving the alcohol that intoxicated the employee.
 

 Finally,
 
 even if
 
 we were to hold that such an exception exists by extending pre-Statute reasoning for affirmative acts by the owner that increase the risk of peril, our review of the record convinces us that the actions of A & D did not arise to the kind of affirmative act on which the pre-statute jurisprudence predicated an imposition of liability. A & D relied on the deposition testimony of both, Ms. Rochel and Deborah Louviere, sole owner of A & D, as well as an affidavit executed by Mrs. Louviere, which it introduced in support of its motion for summary judgment. The two depositions consistently reveal that A
 
 &
 
 D allowed its employees to drink alcohol while working. However, both Ms. Rochel and Mrs. Louviere testified that there were specific conditions on this privilege, i.e., that the employee pay full price for
 
 *204
 
 the drinks and that the employee
 
 not drink to excess so as to get so intoxicated
 
 such that his ability to count and deliver the money at the end of the shift would be compromised. Additionally, both deponents also flatly denied that Ms. Rochel, or any of the employees were ever
 
 encouraged or forced,
 
 to drink alcohol at the bar.
 

 Additionally, contrary to the assertions by Mr. Aucoin, our review of the record and the deposition testimony fails to reveal an alleged Vista Lounge policy that employees drive intoxicated patrons home. Ms. Rochel admitted that Mr. Lagarde had been in and out of the Vista Lounge that night drinking; however, she testified that he was also a friend of hers from high school and that she agreed to bring him home because he needed a ride. Ms. Ro-chel. testified that she had, in the past, also given a ride home after 11swork to the owner’s brother-in-law, not because he was drunk, but because he did not have a ride home. Although Mrs. Louviere testified that she gives people rides “all the time,” when she thinks they are drunk, both women flatly denied that there was any such policy in place at the bar. They were consistent in testifying that the only policy in place regarding intoxicated patrons was that the employees were instructed to offer an intoxicated patron a call to a taxi for a safe ride home. Whether an employee chose to bring a friend or a patron home was left entirely to the discretion and choice of the employee. Thus, Mr. Aucoin has failed to establish that the bar owner in this case imposed a policy on its employees that would require them to provide rides home for patrons or otherwise took any type of affirmative act that
 
 may have
 
 excepted it from the immunity provided by La. R.S. 9:2800.1(B).
 

 VICARIOUS LIABILITY
 

 We now review
 
 de novo
 
 A & D’s claim that it is entitled to summary judgment on the basis that there is no genuine issue of material fact; the evidence presented establishes that Ms. Rochel was not in the course and scope of her employment when the accident at issue occurred; therefore, it cannot be held vicariously liable for the injuries caused by the 'negligence (intoxication) of Ms. Rochel.
 

 This court recently succinctly summarized the law relevant to the imposition of vicarious liability on an employer:
 

 Vicarious liability in Louisiana is based on Louisiana Civil Code article 2320, which states, in pertinent part:
 

 Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
 

 Under this article, liability extends only to" the employee’s tortuous conduct that is within the course and scope of the employment. The specific inquiry in determining whether an |14employee is within the course and scope of his employment is whether the employee’s tortuous conduct is so closely connected in time, place, and causation to his employment duties as to be a risk of harm fairly attributable to the employer’s business as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interest.
 

 Henly v. Phillips Abita Lumber Co.,
 
 06-1856, pp. 10-11 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1112-13. Our supreme court has also been instructive regarding the inquiry necessary for the proper imposition of vicarious liability. In
 
 Orgeron v. McDonald,
 
 93-1353 (La.7/5/94), 639 So.2d 224, 226-27, the court stated that an employee is acting within the course and scope of his employment when the employee’s action is the kind that he is employed
 
 *205
 
 to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. The court has also delineated specific factors to be employed in the inquiry: whether the tortuous act was primarily employment rooted, whether the act was reasonably incidental to the performance of the employee’s duties, whether the act occurred on the employer’s premises, and whether it occurred during the hours of employment.
 
 LeBrane v. Lewis,
 
 292 So.2d 216, 218 (La.1974). Moreover, an employee may be within the course and scope of his employment, yet step out of that realm while engaging in a personal mission.
 
 Timmons v. Silman,
 
 99-3264, p. 4 (La.5/16/00), 761 So.2d 507, 510.
 

 Generally, an employee driving from home to work or returning from work to home is not within the course and scope of his employment, unless he has a job related duty to perform en route.
 
 Orgeron,
 
 639 So.2d at 227. Even still, an identifiable deviation from a business trip for personal reasons generally takes the employee out of the course and scope of employment |lfiuntil the employee returns to the route of the business trip.
 
 Timmons,
 
 761 So.2d at 511. In
 
 Timmons,
 
 an employee was sent by her employer to the post office, approximately four blocks away, to refill the firm’s postage meter and return to work. However, after refilling the postage meter, the employee passed within one or two blocks of her place of employment and continued eighteen blocks past her place of employment on a personal mission to the bank to cash her Christmas bonus check. The court found the employee to be outside the course and scope of her employment when she was involved in an accident on her way to the bank, even though she still had the postage meter to return to work. The court reasoned, “when an employee deviates from the business route by taking a side trip that is clearly identifiable as such, the employee is
 
 unquestionably
 
 beyond the course and scope of employment
 
 while going away from the business route and toward the personal objective”. Id.,
 
 761 So.2d at 511. (Emphasis by underscoring added.)
 

 In this case, the facts are even stronger in establishing that Ms. Rochel was no longer in the course and scope of her employment for A & D, as she had already completed her job related duty — dropping of the cash money to the owner’s home— when she embarked toward her personal objective of giving her friend a ride home. The record reveals that, although her shift was technically over, and she was no longer being paid, the A & D employee charged with closing the bar had the additional job-related duty to deliver cash to the owner’s home. Thus, Ms. Rochel was clearly within the course and scope of her employment for the approximate couple of miles west of the bar to the owner’s home. The record also reveals that after dropping off the money, she was free to do whatever she wished. Although generally she proceeded another five or so miles westbound to her home, on the night in ^question, she chose to drive in the other direction, easterly, past the bar and toward the home of Wayne Lagarde, a friend of hers who had been in the bar that night and asked her for a ride home. Despite Mr. Aueoin’s assertions to the contrary, we find this was a personal mission unrelated to her employment duties, for which her employer cannot be held vicariously liable.
 

 First, the plaintiff has failed to establish that the bar had a policy or preferred practice in place by which the employees were ordered or encouraged to provide patrons with rides home. Although the bar owner, Mrs. Louviere candidly admitted that she, on occasion, had driven pa
 
 *206
 
 trons home, she flatly denied ordering or asking her employees to do the same. In contrast, she and Ms. Rochel consistently testified that the only “bar policy” in place regarding intoxicated patrons or patrons who otherwise needed a ride home was that the employee was to offer to call a taxi for such patron. Moreover, Mr. Au-coin failed to prove his assertion that Ms. Rochel had engaged in this practice in the past, notwithstanding the lack of a formal policy. The evidence adduced established only that on one prior occasion, Ms. Rochel had provided a ride home to the owner’s brother-in-law, not because he was intoxicated, but because he did not have a ride. Finally, we also find that Mr. Aucoin has failed to establish that the ride provided that night by Ms. Rochel to Mr. Lagarde was in any way related to her employment. There was no evidence presented that Mr. Lagarde was intoxicated, rather, only that he needed a ride home. Moreover, although he was a patron at the bar that night, Ms. Rochel testified that in addition to being a patron, Mr. Lagarde was her friend whom she had known since high school, and by all accounts, she voluntarily gave him a ride home that night because he was a friend in need of one.
 

 |17Based on the particular facts presented herein, we are constrained to conclude that Ms. Rochel was no longer in the employ of A & D at the time of this accident, but rather, had completed her employment for the night and was involved in a purely personal mission at the time of the accident, which caused the injuries in this matter.
 

 CONCLUSION
 

 Accordingly, we hold that the defendant is entitled to the immunity provided by La. R.S. 9:2800.1 for the acts of negligence alleged against it as a server of alcoholic beverages. Additionally, based on our factual conclusions, we find there are no genuine issues of material fact remaining and the defendant is entitled to summary judgment as a matter of law. Therefore, the judgment of the trial court granting summary judgment and dismissing the plaintiffs claims is hereby affirmed. Costs of this appeal are assessed to the plaintiff.
 

 AFFIRMED.
 

 [1]
 

 . Specifically, Mr. Aucoin alleged he sustained "severe and debilitating” injuries, including but not limited to injuries to the "head, brain, mouth, tongue, lungs, arms, legs, knees, feet, ankles, neck, back.” Other references in the record reveal that Mr. Au-coin is in a wheelchair and it is unknown whether he will walk again.
 

 [2]
 

 . Mr. Aucoin also named as defendants the bartender, Ms. Rochel and her automobile liability insurer; however, his claims against these defendants were settled and they were dismissed from the suit with prejudice by motion of the plaintiff.
 

 [3]
 

 . The defense of immunity from tort liability is an affirmative defense, which generally must be specifically pled in the defendant’s answer.
 
 Stockstill v. C.F. Industries, Inc.,
 
 94-2072, p. 6 (La.App. 1st Cir.12/15/95), 665 So.2d 802, 810,
 
 writ denied,
 
 96-0149 (La.3/15/96), 669 So.2d 428. The general purpose in requiring that certain defenses be affirmatively pleaded is to give fair notice of the nature of the defense, and thereby prevent a last minute surprise to the plaintiff.
 
 Id.
 
 However, the failure to plead the affirmative defense does not automatically preclude the application of the defense in all cases. The general rule is that the pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and hence, would have been excluded if objected to timely.
 
 Dupont v. Hebert,
 
 06-2334, p. 8 (La.App. 1st Cir.2/20/08), 984 So.2d 800, 807,
 
 writ denied,
 
 08-0640 (La.5/9/08), 980 So.2d 695. In the instant case, the defense was pleaded, but in the motion for summary judgment, rather than the answer. Our review of this record reveals that evidence pertinent to the application of the immunity statute was presented without objection and with no surprise or prejudice to the plaintiff, such that the pleadings were enlarged to include that defense.
 

 [4]
 

 . As detailed earlier, Mr. Aucoin alleges A & D was negligent in allowing and even encouraging its employees to drink while on the job, knowing they would be driving later, and in failing to properly supervise said employees and prohibiting them from getting intoxicated.
 

 [5]
 

 . The
 
 Thrasher
 
 court overruled
 
 Pence,
 
 only to the extent that it is in conflict with that opinion. However, the court also stated, "[ujpon further consideration we now conclude that the opinions of this [c]ourt in Lee and Pence were each in part correct and in part incorrect.” 373 So.2d at 496. The court further stated, "while the [c]ourt in Pence may have been correct in concluding that under the facts of that case the bar owner had the last clear chance to avoid the injury by not ejecting the plaintiff onto a busy highway in a helpless condition, that decision is of little comfort to plaintiff here.” 373 So.2d at 497.
 

 [6]
 

 . The statute provides:
 

 Notwithstanding any other law to the contrary,
 
 no person
 
 .... nor any agent, servant or employee of such a person
 
 who sells or serves intoxicating beverages
 
 ... to a person over the age of the lawful purchase thereof,
 
 shall be liable
 
 to such person
 
 or to any other person ...
 
 for any injury suffered off the premises, including wrongful death and property damage,
 
 because of the intoxication of the person to whom the intoxicating beverages were sold or served.
 

 La. R.S. 9:2800.1 (B)(Emphasis added.)