# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-932


**ZACHARY ZAUNBRECHER, INDIVIDUALLY AND ON BEHALF OF HIS DECEASED FATHER, MICHAEL BLAKE ZAUNBRECHER**

**VERSUS**

**MARISSA MARTIN, JEREMY PONTHIEUX, AND NATHAN PONTHIER**


**\*\*\*\*\*\*\*\*\*\***

ON WRIT OF CERTIORARI FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
AVOYELLES PARISH, STATE OF LOUISIANA
CIVIL SUIT NO. 2013-9544, DIV. "B"
WILLIAM J. BENNETT, PRESIDING JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.


**Cooks, J. concurs and assigns reasons.**


**MOTION TO STRIKE WRIT APPLICATION OF MARISA MARTIN DENIED; MOTION TO STRIKE EXHIBITS D AND I OF PLAINTIFFS' OPPOSITION GRANTED; WRIT GRANTED AND MADE PEREMPTORY.**

**Charles A. Cerise, Jr.**
**Edwin C. Laizer**
**Kellen J. Matthews**
**Louis C. LaCour, Jr.**
**ADAMS AND REESE, LLP**
**701 Poydras Street, Suite 4500**
**New Orleans, Louisiana 70139**
**(504) 581-3234**
**COUNSEL FOR DEFENDANT/APPLICANT:**
   **Marissa Martin**

**Amanda G. Clark**
**4981 Bluebonnet Blvd.**
**Baton Rouge, Louisiana 70809**
**(225) 928-5400**
**COUNSEL FOR DEFENDANTS/APPLICANTS:**
   **Jeremy Ponthieux**
   **Nathan Ponthier**

**Robert M. Marionneaux, Jr.**
**MARRIONNEAUX LAW FIRM**
**660 St. Ferdinand Street**
**Baton Rouge, Louisiana 70802**
**(225) 330-6679**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
   **Zachary Zaunbrecher, individually and on behalf of his deceased**
   **father, Michael Blake Zaunbrecher**

**Duncan McKeithen**
**Michael T. Johnson**
**JOHNSON, SIEBENEICHER & INGRAM**
**2757 Highway 28 East**
**Pineville, Louisiana 71360**
**(318) 484-3911**
 **COUNSEL FOR RESPONDENTS:**
   **The Estate of Leo David**
   **Liberty Mutual Insurance Company**

**CONERY, Judge.**

Defendants/Relators, Marissa Martin, Nathan Ponthier, and Jeremy Ponthieux, seek supervisory writs from the judgment of the Twelfth Judicial District Court, Parish of Avoyelles, the Honorable William J. Bennett presiding, which denied their motion for summary judgment on the issue of statutory immunity provided by La.R.S. 9:2800.1, the Louisiana Anti-Dram Shop Statute. For the following reasons, Ms. Martin's, Mr. Ponthier's, and Mr. Ponthieux's writs are granted and made peremptory. All claims made against Ms. Martin, Mr. Ponthier, and Mr. Ponthieux by Respondents, Zachary Zaunbrecher, individually and on behalf of his deceased father, Michael Blake Zaunbrecher, the Estate of Leo David, and Liberty Mutual Insurance Company, are dismissed with prejudice at Respondents' costs.

Respondents' motion to strike the writ application of Marissa Martin is denied. Defendants' motion to strike Exhibits D and I of Plaintiff's opposition is granted.

## STATEMENT OF THE CASE

This wrongful death suit arises out of a fatal automobile accident that occurred on July 11, 2013, involving Michael Blake Zaunbrecher, the father of Plaintiff, Zachary Zaunbrecher, and Leo J. David. Zachary Zaunbrecher (Mr. Zaunbrecher) initially filed suit, both individually and on behalf of his deceased father, Michael, against the Estate of Leo J. David, his insurer, Liberty Mutual Insurance Company, and Louisiana Farm Bureau, the uninsured motorist insurer of Michael Zaunbrecher. Plaintiff's petition alleged that Mr. David had a blood alcohol level of .21, and due to his intoxication, he negligently lost control of his vehicle, crossed the center line of La. Highway 1 in Avoyelles Parish, and ran head on into Michael Zaunbrecher's vehicle, causing his death. Mr. Zaunbrecher later amended his petition to add as

defendants the Tunica-Biloxi Gaming Authority, d/b/a/ Paragon Casino Resort, (Paragon) and three of its employees in their individual capacities: Ms. Martin, a bartender, and Mr. Ponthier and Mr. Ponthieux, security guards (collectively, employee defendants). Plaintiff claims that Ms. Martin negligently overserved an already intoxicated Mr. David, and that the security guards failed to take steps to prevent Mr. David from leaving the casino in an obviously intoxicated state constituting a contributing cause of the accident and damages to Mr. Zaunbrecher. Paragon and the employee defendants answered the petition and filed exceptions of lack of subject matter jurisdiction, no cause of action and lis pendens.[1] Paragon Casino was owned and operated by the Tunica-Biloxi tribe, and the tribe claimed sovereign immunity prohibited claims in Avoyelles Parish District Court for the casino and its employee defendants.

On May 18, 2015 the trial court held a hearing on the defendants' exception of lack of subject matter jurisdiction based on tribal sovereign immunity, granted the defendants' exception and dismissed Mr. Zaunbrecher's claims against Paragon and the employee defendants. Mr. Zaunbrecher filed a timely appeal with this court.

On appeal, a panel of this court held the doctrine of sovereign immunity applied to the Tunica-Biloxi Gaming Authority d/b/a/ Paragon Casino Resort, thereby affirming the dismissal of Paragon. However, the panel found that the doctrine of **sovereign immunity** did not apply to its employees named in their individual capacities and reversed the trial court's ruling dismissing Ms. Martin, Mr. Ponthier, and Mr. Ponthieux. *See Zaunbrecher v. Estate of David*, 15-769 (La.App. 3 Cir. 12/9/15), 181 So.3d 885, *writ denied*, 16-49 (La. 2/26/16), 187 So.3d 1002.

---

[1] Suit was also filed in the Tunica-Biloxi Tribal Court where it remains pending.

Certiorari was then denied by the Supreme Court in *Tunica-Biloxi Gaming Authority v. Zaunbrecher*, 85 U.S. 3521, 85 U.S. 3522, 137 S.Ct. 2091 (2017). The suit against the employee defendants was remanded to state district court for further proceedings.

On August 23, 2017, the employee defendants filed a motion for summary judgment seeking (for the first time) dismissal of the entirety of the suit against them based on statutory immunity provided by La.R.S. 9:2800.1. On September 27, 2017, the employee defendants' motion for summary judgment was heard and ultimately denied by the trial court. On October 12, 2017, the employee defendants filed this application for supervisory writs seeking reversal of the trial court's ruling denying their motion for summary judgment and requesting expedited consideration due to the jury trial that was scheduled for October 31, 2017.

The dismissal of Paragon from the original case addressed only the doctrine of sovereign immunity of the Tunica-Biloxi nation, the owner of the Paragon Casino. This writ is the first time this court has addressed the statutory immunity granted by La.R.S. 9:2800.1 in relation to the three remaining defendants in their individual capacities.

While the original writ in CW-17-932 was pending before this court, on October 13, 2017, the trial court denied the employee defendants' motion to continue the jury trial. On October 17, 2017, the employee defendants notified this court of the trial court's decision to deny the continuance and on October 30, 2017, sought a stay of the jury trial, which was also denied by the trial court. The employee defendants then filed an emergency writ, in docket number CW-17-1015, seeking a stay of the jury trial pending consideration of their application for supervisory writs. A Stay Order was issued by this court on October 31, 2017, in docket number CW-17-1015. We also instructed the parties to submit supplemental briefs and allowed

3

the parties until November 15, 2017, to request oral argument in the original docket number CW- 17-932. A timely oral argument request was made by the employee defendants, and oral argument was fixed for January 24, 2018, pursuant to La.Code Civ.P. art. 966(H) which states, "On review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument."

## SUPERVISORY RELIEF

"A court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time according to the discretion of the court." *Herlitz Constr. Co., Inc., v. Hotel Investors of New Iberia, Inc., et al*, 396 So.2d 878, 878 (La.1981) (per curium). "This general policy, however, should not be applied mechanically." *Id*. Thus, when the trial court's ruling:

> is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits.

Id.

This case involves the determination of a question of law as to whether the employee defendants are entitled to qualified immunity from this lawsuit under a specific statute. The "immunity" operates not as a defense to liability, but as a complete bar to the suit itself. In determining the question of qualified immunity, the United States Supreme Court has ruled that the defendant has an entitlement to avoid the costs and expense of standing trial. Mitchell v. Forsyth, 472 U.S. 511, 105

4

S.Ct. 2806 (1985). We issued a stay order on October 31, 2017 (with one dissent) in CW-1015 precisely for that reason.

Further, this court's supervisory jurisdiction may also be exercised to reverse a trial court's denial of a motion for summary judgment and to enter summary judgment in favor of the mover. Csaszar v. Nat'l Cas. Co., et al., 14-1273 (La.App. 3 Cir. 11/4/15), 177 So.3d 807, writ denied, 15-2221 (La. 1/25/16), 185 So.3d 752.

**Motion To Strike Ms. Martin's Writ Application**

In his opposition to the October 12, 2017 writ filed on behalf of the employee defendant Marissa Martin by her counsel Amanda Clark, Mr. Zaunbrecher, the Estate of Leo David, and Leo David's insurer, Liberty Mutual, (hereafter Respondents), argue that the writ filed on behalf of Ms. Martin should be stricken from the record based on the signing of an October 5, 2017 motion to substitute counsel of record for Ms. Martin submitted by Charles A. Cerise, Jr. to the trial court making him counsel of record for Ms. Martin.

In her reply to this court, Ms. Clark clearly states that she had full authority from Ms. Martin to appear as her appellate counsel when she filed a notice of intent to seek supervisory writs on behalf of Ms. Martin and the other employee defendants on September 27, 2017, and to file the initial writ application on October 12, 2017. Further, Ms. Clark urges that a party may engage separate appellate and trial counsel, which she indicates is the case in this litigation.[2] Respondents cite no statutory authority or jurisprudence to support their request to strike Ms. Martin's writ based on Ms. Clark's appearance as appellate counsel. There is no evidence in the record before us that Ms. Clark was not authorized to appear as appellant counsel for Ms.

---

[2] We note that Ms. Martin now has separate appellate counsel as Mr. Cerise now represents her, while Ms. Clark remains appellate counsel for Mr. Ponthier and Mr. Ponthieux.

Martin and file this writ on her behalf. We deny Respondents' motion to strike Ms. Martin's writ filed by Ms. Clark.

**Motion To Strike The Affidavit of Ms. Shirley Rachal/ Written Stipulation**

On October 20, 2017, Respondents filed a brief in opposition to the defendants' writ with this court and attached new evidence that was not filed with the lower court in opposition to the summary judgment, namely Exhibit D, the Affidavit of Shirley Rachal, dated October 18, 2017, and Exhibit I, a "Written Stipulation," also dated October 18, 2017. The Exhibit I stipulation pertained to insurance coverage for the acts of the employee defendants.[3]

On October 24, 2017, the employee defendants filed a motion to strike the October 18, 2017 affidavit of Shirley Rachal as well as the written stipulation pertaining to insurance coverage. Neither exhibit was offered or introduced into the record in the lower court in opposition to the employee defendants' motion for summary judgment.

In their motion to strike, the employee defendants stated:

> In accordance with the Uniform Rules of Court, Defendants submitted a copy of the entire trial court record with their Writ Application, including Plaintiff's opposition to the summary judgment and all exhibits submitted therewith to the district court and a copy of the transcript of the hearing on Motion for Summary Judgment.

The written stipulation and the affidavit of Ms. Rachal are both dated October 18, 2017. The hearing on the employee defendants' motion for summary judgment had already been heard on **September 26, 2017**. Therefore, Exhibit D, the Affidavit,

---

[3] This case now has a somewhat unusual procedural posture as there is no longer pending in state court a claim against Paragon, their employer, under the theory of respondeat superior. Rather the employee defendants are being sued in their individual capacities. Their alleged negligent acts are nonetheless covered by an insurance policy issued to Paragon, as shown in Exhibit I. Most Louisiana cases do not discuss the applicability of La.R.S. 9:2800.1 immunity for individual employees for the obvious reason that respondeat superior applies in those cases.

and Exhibit I, the Written Stipulation, could not have been properly introduced into evidence in opposition to the employee defendants' motion for summary judgment and could not have been considered by the trial court in its denial of the employee defendants' motion for summary judgment.

The Louisiana Supreme Court in *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 88 (citations omitted) addressed this same issue:

> Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered on appeal.
>
> Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence.

In *Harris v. Aetna Ins. Co.*, 509 So.2d 486, 489 (La.App. 3 Cir. 1987), a panel of our court stated: "[T]his court will only review issues which have been submitted to the trial court and raised in specifications or assignments of error, unless the interest of justice clearly requires otherwise. Rule 1-3, Uniform Rules, Courts of Appeal." Accordingly, this court's examination of these two exhibits is beyond the scope of this writ application, and the motion to strike filed on behalf of the employee defendants is hereby granted.

## ON THE MERITS

### Standard of Review

Appellate courts review motions for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The reviewing court, therefore, is tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to

7

material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

Louisiana Code of Civil Procedure Article 966(D)(1)(2) further provides:

(1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

(2) The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum.

This court's supervisory jurisdiction may also be exercised to reverse a trial court's denial of a motion for summary judgment and to enter summary judgment in favor of the mover. *Csaszar*, 177 So.3d 807.

In *Roy v. Kyrles, Inc.*, 07-1605, p. 4 (La.App. 3 Cir. 5/14/08), 983 So.2d 975, 978, a panel of our court held that the legislature further clarified the burden of proof in enacting La.Code Civ.P. art. 966(C)(2) (now 966(D)(1)(2)) and stated:

This amendment parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The amended article places the initial burden of proof on the mover of the motion for summary judgment. If the mover meets this initial burden, the burden of proof then shifts to the nonmoving party that has the burden of proof on this particular issue at trial. This nonmoving party then must put forth evidence that shows he or she will be able to meet that burden at trial. If the nonmoving party cannot, then the motion for summary judgment should be granted. Marist & Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999).

Oral argument was requested and granted in accordance with La. Code Civ.P. art. 966(H).

*Statutory Immunity Pursuant to Louisiana Revised Statutes 9:2800.1*

The employee defendants argue they are entitled to summary judgment based on statutory immunity granted under La.R.S. 9:2800.1 (emphasis added) (footnotes omitted), which provides in pertinent part:

A. **The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.**

B. **Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.**

. . . .

D. **The insurer of the intoxicated person shall be primarily liable with respect to injuries suffered by third persons.**

E. The limitation of liability provided by this Section shall not apply to any person who causes or **contributes to the consumption of alcoholic beverages by force** or by falsely representing that a beverage contains no alcohol.

Ms. Martin, the bartender, was an employee of Paragon, the holder of the permit to serve alcohol, and clearly has statutory immunity. The two security guards, Mr. Ponthier and Mr. Ponthieux, were also employees of Paragon. Though they did not directly serve alcohol to Mr. David, they are nevertheless entitled to statutory

9

immunity as "agent[s], servant[s], or employee[s]" of the permit holder, Paragon, who was the defined "person" holding the necessary license to sell alcohol.

Respondents nevertheless have argued that La.R.S. 9:2800.1 is somehow ambiguous and only applies to those who actually sell or serve alcohol, and not to managers, bouncers, and security guards such as Mr. Ponthier and Mr. Ponthieux.

The title of the statute itself incudes the language: "Limitation of liability for loss **connected with sale, serving, or furnishing of alcoholic beverages**" (emphasis added). Respondents insist that the qualifying phrase in Section B of the statute, "who sells or serves intoxicating beverages[,]" somehow makes the statute ambiguous and, under the rules of strict construction against limitations in qualified immunity statutes, immunity should not apply to the security guards in this case.

If the legislature had intended for immunity to apply only to the "'person" holding the permit,' it would not have added the additional language 'nor any agent, servant, or employee of such person,'" to the statute. To read the statute otherwise would defeat the whole purpose of the statute and lead to absurd consequences. In order to defeat statutory immunity, all a plaintiff would have to do, as in this case, is plead the negligence of an employee not directly involved in the "sale, serving, or furnishing of alcohol."

To the contrary, legislative intent was made clear in the first paragraph of the statute itself: "A. The legislature finds and declares that the consumption of intoxicating beverages, rather that the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person." La.R.S. 9:2800.1(A). Louisiana Civil Code Article 9 states, "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law

10

shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Louisiana Civil Code Article 10 states, "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." *See Aucoin v. Rochel*, 08-1180 (La.App. 1 Cir. 12/23/08), 5 So.3d 197, *writ denied*, 09-122 (La. 3/27/09), 5 So.3d 143; *Tregre*, 224 So.3d 1234; *Roy*, 983 So.2d 975.

Therefore, in concise terms, the legislature has taken away any application of the duty-risk analysis in a determination of fault in a situation such as the one at issue before this court and squarely placed the responsibility for the consumption of alcohol on the individual consuming the alcohol, in this case Mr. Leo David.

### The "Affirmative Acts" Argument

Respondents further argued that statutory immunity under La.R.S. 9:2800.1 did not control the cause of action against the employee defendants, citing alleged genuine issues of material fact as to "affirmative acts" of negligence they argue were not intended to be covered by the statute.

Moreover, tenacious counsel for Respondents has forcefully argued that it is our duty as an appellate court to rule as a matter of public policy that casinos and their employees should not have immunity under La.R.S. 9:2800.1. Counsel argued that the casino's policies require their employees to intentionally push alcohol on casino patrons to encourage overindulgence and lower inhibitions, arguably to increase gambling profits, and this practice led to Mr. Zaunbrecher's unfortunate death due to the intoxication of Mr. David. Counsel insists that we should not countenance these actions and should create an exception for "affirmative acts" and a "casino exception" to La.R.S. 9:2800.1 immunity and hold the employee defendants accountable.

11

While we appreciate "zealous advocacy," respectfully, we decline counsel's invitation and find that such decisions are for the legislature to decide. Many of the arguments present in this case were presented to the legislature when it enacted La.R.S. 9:2800.1 in 1986.

As noted by counsel in Ms. Martin's supplemental brief to this court in Footnote 29:

> The "affirmative acts" discussion has some parallels to the discussion in the Louisiana Senate Committee Minutes reflecting the committee's rejection of an attempt to add a "gross negligence" exception to the statute. The Senate Committee rejected a "gross negligence" exception because the exception would have swallowed the rule and defeated the intent of the statute, which was to place the responsibility on the individual consuming alcohol. *See* May 27, 1986 Senate Committee on Judiciary B meeting minutes, at pp. 8-10, particularly comments of Representative Hainkel at page 9, copy attached as Exhibit 1. Likewise, any effort to manufacture an "affirmative acts" exception that is not in the statute would, as a practical matter, frustrate the purpose of the statute, as every case would then become an exercise in artful pleading, and cases like this, where immunity should be clear, would have to go to trial. The legislature drew a bright line on purpose and that bright line should be enforced.

Obviously, the legislature has had thirty-one years to craft exceptions to the statute and has failed to incorporate any additional exceptions. We must apply the clear and unambiguous law as written and as has been uniformly interpreted by the various appellate courts since the statute was enacted. To do otherwise would undermine the purpose for which the statute was enacted and "would have swallowed the rule and defeated the intent of the statute, which was to place the responsibility on the individual consuming alcohol." *See Mtg. Min. of the Sen. Comm. on Judiciary B*, May 27, 1986, pp. 8-10, (House Bill No. 2155 by Representative D'Gerolamo).

We find that in light of the statutory immunity provided by La.R.S. 9:2800.1, the only **material issues** of fact in this case are:

1.  Paragon had a valid permit to sell and serve alcoholic beverages.

2.  Marissa Martin, Jeremy Ponthieux, and Nathan Ponthier were employees of Paragon at all times pertinent.

3.  Mr. David was far beyond the legal age to purchase alcohol.

4.  The fatal accident occurred as a result of a collision caused by the intoxication of Mr. David, who had a blood alcohol content of .21. The collision occurred off the premises of Paragon, some fifty to fifty-five minutes after Mr. David left the casino property at location some seven to nine miles from the casino on Highway 1 when Mr. David crossed the center line and collided head on into the vehicle being driven by Mr. Michael Zaunbrecher, plaintiff's father, resulting in both men's death.

The trial court focused its ruling on possible issues of fact that are not relevant to application of the statute: 1) Whether Ms. Martin served an obviously intoxicated man; 2) Whether the policies of the casino required service of a minimum number of drinks per hour resulting in overserving Mr. David and allowing him to become intoxicated and leave the casino in an obviously intoxicated state; and 3) Whether the security guards properly followed rules and procedures or committed independent acts of negligence by failing to properly supervise an "intoxicated patron," allowing him to drive away from the casino while in an "obviously intoxicated state."

The trial court stated in its reasons for ruling:

I don't have a problem with your argument about the dram shop, I mean it is what it is, but my issue that I have with this whole thing on summary judgement [sic] is the allegation _ _ _ brought up by the plaintiff that was a duty risk analysis concerning the casino's instructions to its employees, it's [sic] handbook, it's [sic] rules, it's [sic] regulations, I think I read where someone testified they have to serve 33 drinks in a [sic] hour, or 44 drinks in a [sic] hour, whatever it may be, so outside of the dram shop, does that create a genuine issue of material fact as to the disapplication [sic] of a duty risk analysis on just basic negligence saying you're telling them how to operate and you're not operating that way and so if you don't do what you're told and don't do it in the way that you're instructed, do they still get the benefit of that anti dram shop act?

13

In conclusion, the trial court stated:

> I mean anti-dram shop it is what it is, but there's an issue of fact as to whether A, Ms. Martin poured alcohol to a man obviously intoxicated whether the policies of a casino saying serve so many drinks an hour whatever it is, it[']s an issue of fact, I'm saying it makes you lose, but there's an issue of fact, there's an issue of fact as to whether these two security guards properly followed rules, procedures and committed any acts of negligence outside of the dram shop, now if the dram shop is found to be a total and complete immunity, it's not qualified as Mr. MARIONEAUX said, and basically they can do whatever they want, they can hand him alcohol while he's turning the key to start his [car], and I understand that but under the, and I'm just, I'm not saying you're wrong in the law, I'm just saying there's a genuine issue of material fact on all of these issues that precludes summary judgement [sic], I'm [sic] saying plaintiff wins, absolutely not, I'm just saying there's an issue of fact, and Ms. Martin got [sic] to be deposed, that's simple…

After oral argument, the trial court stated on the record that it was unaware of what the uncontradicted video evidence[4] introduced by the employee defendants showed with respect to Ms. Martin and based its decision to deny the summary judgment to her on Respondents' unsupported allegations that "Ms. Martin served alcohol to this man after he was allegedly intoxicated." In fact, a thorough review of the uncontradicted video evidence introduced at the summary judgment hearing demonstrates that Ms. Martin was clearly identified as serving Mr. David one beer at 5:45 pm.  She may have served up to 4 beers between 5:45 pm and 11:01 pm, when she clocked out as shown by her time card in evidence (Exhibit K-1).

In essence, the trial judge based its denial of the summary judgment on plaintiff's unsupported allegations of so called "affirmative acts" which the trial judge believed to be an exception to La.R.S. 9:2800.1 immunity.  No such exception is contained in the statute itself, and such an exception is not supported by any jurisprudential interpretations of the statute.

---

[4] Exhibit K-1

The "affirmative acts" exception argued by Respondents was discussed in footnote 3 of the decision by the Louisiana Supreme Court in *Berg v. Zummo*, 00-1699, p. 3 (La. 4/25/01), 786 So.2d 708, 719, which stated:

> This Court has never addressed, nor do we address today, whether the bar owner can be liable in spite of La. R.S. 9:2800.1 for taking an affirmative act which increases the peril to an intoxicated *adult* patron under the pre-La. R.S. 9:2800.1 reasoning of *Thrasher v. Leggett*[*, 373 So.2d 494 (La.1979).]  In *Mayo v. Hyatt Corp.* 896 F.2d 47 (5th Cir. 1990), the United States Fifth Circuit Court of Appeal; held that under La. R.S. 9:2800.1, "the sole duty of a seller of alcoholic beverages is to avoid taking 'affirmative acts which increase the peril to an intoxicated person.'" 898 F.2d at 49 (citing *Thrasher v. Leggett, supra*).

Prior to the enactment of La.R.S. 9:2800.1 in 1986, there were a few Louisiana cases that analyzed the liability of bar owners/their employees, and even social hosts, based on a duty risk analysis that independent acts of negligence on the part of persons serving alcohol to obviously intoxicated persons who may have caused harm to third persons.

The supreme court in *Thrasher*, 373 So.2d at 496-97 (footnote omitted), thoroughly considered the issue and held:

> There is, and should be, no absolute liability imposed upon an alcoholic beverage retailer for the consequences of a patron's intoxication. As this Court observed in *Lee* [*v. Peerless*, 248 La. 982, 183 So.2d 328 (1966)], Louisiana has never had a civil damage or "dramshop" statute. Regardless of whether the prohibition of R.S. 26:88(2) is purely and simply criminal in nature or has attendant civil consequences the cause more proximate to an injury to an inebriated patron which results from his intoxication is the consumption of the alcohol and not the sale. There is a real element of contributory negligence implicit in this situation. There is therefore no need to consider the bar owner's conduct under a duty-risk analysis.

Shortly thereafter, the legislature adopted La.R.S. 9:2800.1.[5]

---

[5] See *Godfrey v. Boston Old Colony Ins. Co.*, 97-2568 (La.App. 4 Cir. 5/27/98), 718 So.2d 441, *writ denied*, 98-2487 (La. 11/20/98), 729 So.2d 563, for a thorough historical discussion of the liability of persons serving alcohol to intoxicated persons and the historical foundation of La.R.S. 9:2800.1. The court in *Godfrey* was careful to point out in that case that the immunity statute did not apply, as Mr. Godfrey was still a minor and the claim was exempted from the statute.

The statute was enacted for the express purpose of making it clear that the only exceptions to the statutory immunity provided in La.R.S. 9:2800.1 are those mentioned in the statute itself, i.e. serving someone alcohol when they are underage, or by force, or by "falsely representing that a beverage contains no alcohol." La.R.S. 9:2800.1(E).

Since the passage of La.R.S. 9:2800.1 in 1986, Louisiana courts have strictly interpreted the statutory immunity law as written and have upheld summary judgments or exceptions in favor of defendants in a variety of fact situations. *See Tregre v. Champagne*, 16-681 (La.App. 5 Cir. 7/30/17), 224 So.3d 1234, *writ denied*, 17-1477 (La. 11/13/17), 230 So.3d 208; *Aucoin*, 5 So.3d 197; *Bourgeois v. Boomtown, LLC of Delaware,* 10-553 (La.App. 5 Cir. 2/15/11), 62 So.3d 166; *Bertrand v. Kratzer's Country Mart*, 563 So.2d 1302 (La.App. 3 Cir.), *writ denied*, 569 So 2d. 959 (La.1990); *Roy*, 983 So.2d 975; *Morris v. Bulldog BR, LLC*, 13-1861, (La.App. 1 Cir. 6/6/14), 147 So.3d 1122; *Comeaux v. Lemmons*, 10-651 (La.App. 3 Cir. 12/8/10) (unpublished opinion); *Zapata v. Cormier*, 02-1801 (La.App. 1 Cir. 6/27/03), 858 So.2d 601; and *Alvarenga v. Mills*, 01-872, (La.App. 4 Cir. 5/10/02), 818 So.2d 1017, *writ denied*, 02-1610, (La. 9/30/02), 825 So.2d 1197.

We have thoroughly reviewed the record in its entirety and have determined there are no disputed issues of material fact that might give rise to a lawful exception to the immunity provided by the statute at issue.

### *Actions Of The Bartender Ms. Martin*

Even if there were an "affirmative acts" exception to La.R.S. 9:2800.1, summary judgment is still appropriate based on the uncontroverted evidence introduced in support of the motion. It is uncontested that Ms. Martin, an employee of Paragon, began her shift as a bartender at Paragon Bar No. 2 at 4:00 p.m. on July

16

10, 2013. At approximately 5:31 p.m., the uncontradicted video evidence introduced by the employee defendants establishes that Mr. David arrived at the Paragon Casino, parked his vehicle in the back of the parking lot, and proceeded into the front entrance. He can be seen walking through the lobby to Bar No. 2, where Ms. Martin is working.

At approximately 5:45 p.m. Ms. Martin is seen on the video with dark hair and a white towel in her pocket serving Mr. David a beer. She was identified by Mr. Larry Robertson, the Banquets Manager at Paragon, in his deposition. Mr. David was served another beer at approximately 6:07 p.m. by an unknown bartender at Bar No. 2, who was not Ms. Martin. Mr. David left Bar No. 2 and proceeded to play blackjack, where he is served a beer by the waitress serving the blackjack tables. Mr. David did not return to Bar No. 2 until approximately 9:14 p.m., where he is served another beer. He returned to the blackjack tables and is shown on the video at approximately 10:35 p.m. playing blackjack with no visible impairment discernable on the video. The evidence is undisputed that Ms. Martin clocked out at 11:01 p.m. and left (See Exhibit K-1, time card). There is no evidence showing that Ms. Martin served Mr. David after 11:01 pm.[6]

---

[6]Respondents allege that Ms. Martin served Mr. David through the "wee hours of morning," based on the question to Mr. Robertson, the Banquets Manager at Paragon at his deposition:

Q: All right, At bar number (2) two on July 10th and July the 11th, in the *wee morning hours* of **July 10th** and **July 11th**, who did you notice was working the bar there? (emphasis added).
A: Marissa Martin and part of it I saw Peggy Williams.

Q: I'm sorry, Peggy who?
A: Williams.

Q: Peggy Williams. And as you watched that video footage of bar number (2) two and Ms. Martin and Ms. Williams, did you see them serving Leo David alcoholic beverages?
A: Yes.

Based on the uncontradicted summary judgment evidence we find that Ms. Martin did not "overserve" Mr. David, even if statutory immunity did not apply. Even assuming she did, the collision in question occurred eight hours after her shift ended and is too attenuated to be a proximate cause of the accident at issue. *Thrasher*, 373 So.2d 494.

### *Actions of Mr. Ponthieux-First Security Guard*

At approximately 4:22 a.m., the uncontradicted summary judgment evidence shows that Mr. David was playing the slot machines and sitting next to a woman with whom he appears to be engaged in a conversation. Mr. Ponthieux calls Mr. David over and speaks briefly to him. The video does not show that Mr. David is unruly, agitated, or harassing anyone.[7] After a brief conversation lasting about two minutes, Mr. David returns to the same slot machine and continues playing. The only unusual thing about Mr. David's appearance on the video is that his shorts appear to be wet in some manner.

In his deposition testimony introduced by employee defendants in support of their motion for summary judgment, Mr. Ponthieux testified that his only

---

Q:   Thank you sir. That's the particular video that you were looking at yesterday, correct?
A:   Yes.

Q:   And focused on any other bar where Mr. David was served?
A:   No. there was - from what I saw, there was no other bar he was at.

The question included the names of two employees, Ms. Martin and Ms. Peggy Williams, and did not clarify whether Ms. Martin actually served alcohol to Mr. David after 11:00 p.m. on July 10th. The actual uncontradicted evidence shows Ms. Martin served Mr. David only until 11:00 p.m. then clocked out. There is no genuine issue of material fact in light of the objective uncontradicted time card and video evidence.

[7] Ms. Shirley Rachel's "Affidavit," Exhibit D attached to plaintiff's opposition brief, has been stricken from the record. However, even if it were in evidence, it does not create a "material issue of fact", as La.R.S. 9:2800.1 has no "affirmative acts" exception to its application.

involvement with Mr. David was at 4:22 a.m., as confirmed by the uncontradicted video footage. Mr. Ponthieux testified in his deposition that he was asked to check on the patron in the slot machine areas because of a possibility that the stool he was sitting on may have been "wet" due to what respondents have alleged to be self-urination or defecation. Mr. Ponthieux testified that Mr. David did not show any signs of intoxication. Mr. Ponthieux spoke with Mr. David in response to the complaint made about the "wet spot" on a chair, and, according to Mr. Ponthieux, Mr. David responded he had spilled a drink, either hot chocolate or coffee. During the brief encounter, Mr. Ponthieux testified he did not smell urine or feces, but as previously stated, he did notice that Mr. David's shorts displayed a wet spot of some kind.

The 4:22 a.m. encounter was the only interaction by Mr. Ponthieux with Mr. David that is in evidence. Even if there were an "affirmative acts" exception to the statute, there are no "material issues of fact" demonstrating negligence on the part of Mr. Ponthieux. Again, the collision occurred seven to nine miles from the Paragon Casino, and some fifty to fifty-five minutes after Mr. David left the casino and approximately two and one-half hours after Mr. Ponthieux spoke with Mr. David. The collision was too far removed in time to show that any actions or inaction by Mr. Ponthieux was the proximate cause of the collision occurring at approximately 7:00 a.m. *Thrasher*, 373 So.2d 494; *Roy*, 983 So.2d 975.

### Actions of Mr. Ponthier-Second Security Guard

The uncontradicted video evidence shows that Mr. Ponthier encountered Mr. David at 6:01 a.m. on July 11, 2013, while Mr. David was playing a slot machine. The video shows the two men standing and talking, and then Mr. David walks away unescorted.

19

Mr. Ponthier likewise testified in his deposition that he observed no signs of intoxication, i.e. slurring, staggering, or vomiting, in his brief encounter with Mr. David at 6:01 a.m. His testimony is confirmed by the video footage, which shows Mr. David walking away from Mr. Ponthier and exiting the front door of the casino alone at 6:04 a.m., then walking unescorted to his vehicle at the far end of the casino parking lot with no visible signs of impairment. At 6:07 a.m., he backs out of the parking space, and at 6:08 a.m., exits the casino property and prepares to make a left turn, with his blinker light flashing. At 6:09 a.m., Mr. David turns left on Highway 1 and heads southbound. Again, the fatal collision between Mr. David's vehicle and that of Mr. Zaunbrecher's father occurred seven (7) to nine (9) miles in the opposite direction, some **fifty to fifty-five minutes after** Mr. David had left the Paragon parking lot. There is no evidence in the record as to where Mr. David may have gone after he left the casino premises or whether he consumed alcohol, either in his truck or at another establishment. The only relevant fact is that the collision occurred "off the premises" of Paragon as required for application of the statutory immunity outlined in La.R.S. 9:2800.1.

According to their uncontradicted deposition testimony, neither Mr. Ponthieux or Mr. Ponthier instructed Mr. David to leave the casino, nor did either man "forcibly eject" Mr. David or escort him to his vehicle prior to the accident as alleged in Respondents' petition. Their uncontradicted deposition testimony, as corroborated by the video evidence, was that Mr. David showed no obvious signs of intoxication when he left the casino. Respondents' allegations that Mr. David was forcibly ejected from the casino in an obviously intoxicated state and was escorted to his car by Mr. Ponthier and Mr. Ponthieux are not supported by any evidence filed

20

in opposition to the uncontradicted deposition and video evidence filed by the employee defendants.

### *Respondents' Failure To Create A Material Issue Of Fact For Trial*

Respondents have failed to produce any evidence to dispute the testimony of the security guards and video footage of Mr. David, which covers the time of his arrival at the Paragon Casino at approximately 5:30 p.m. on July 10, 2013, until his departure at 6:04 a.m. on July 11, 2013, all of which was submitted into evidence in support of the employee defendants' motion for summary judgment. Likewise, there is uncontradicted evidence in the form of Ms. Martin's time card showing she clocked out at 11:01 p.m., approximately **seven hours** before Mr. David left the casino and **eight hours** before the automobile collision in question.

The law is clear that "[M]ere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-603, pp. 7-8 (La.App. 3 Cir. 12/9/15), 181 So.3d 900, 905.

### *Statutory Immunity Applies*

Even if the record contained any support for the allegations of Respondents that Mr. David was somehow overserved by the bartender Ms. Martin, or by the gaming table waitresses, who are not named as employee defendants, or that the security guards Mr. Ponthier and Mr. Ponthieux forcibly ejected him from the casino knowing that he was going to drive on a highway in an intoxicated state, statutory immunity nonetheless applies.

In *Tregre*, 224 So.3d 1234, a patron of Boogie's Lounge, LLC, Mr. Dallas Veillon, was drinking at Boogie's located next to a busy highway and **was forcibly**

21

**ejected from the lounge** by the bar's employees in an obviously intoxicated state with the knowledge that he was highly intoxicated and was going to drive his vehicle on that highway. Shortly after being ejected from the lounge, Mr. Veillon got into his car and proceeded southbound on La. Highway 52. St. Charles Parish deputy sheriff Jeff Watson, while in the course and scope of his employment, was traveling northbound. Mr. Veillon attempted to make a left turn directly in the path of Deputy Watson and was struck by Deputy Watson's vehicle, which then entered the southbound lane and hit Mr. Tregre's vehicle head on. Deputy Watson was killed in the accident, and Mr. Tregre suffered serious injuries.

Both Mr. Tregre and the wife of Deputy Watson filed suit against Mr. Veillon, Boogie's, and its owner/manager. In opposition to a motion for summary judgment filed by Boogie's and its owner, plaintiffs did not contend that La.R.S. 9:2800.1 did not apply, but instead contended, as in this case, that Boogie's, through the actions of its employees, **"had a duty to avoid committing affirmative acts, which they allege caused or contributed to the accident at issue."** *Tregre*, 224 So.3d at 1240 (emphasis added). Similar to the allegations in this case, the petitions filed by Mrs. Watson and Mr. Tregre alleged:

> [T]hat immediately prior to the accident, employees of Boogie's forcibly ejected Mr. Veillon from the bar, which is next to a busy highway, with the knowledge that he was intoxicated and was going to drive on the roadways in an inebriated condition. They further alleged that the bartender working at the time [of the incident] did not have a valid license to serve alcohol.

*Id*.

In affirming the trial court's summary judgment in favor of Boogie's and its owner, the fifth circuit panel stated:

> However, by enacting La.R.S. 9:2800.1, the legislature has found that the consuming of alcohol is the proximate cause of injury inflicted by

22

an intoxicated person. The statutorily provided exceptions to this limitation of liability apply only to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that the beverage has no alcohol, or when alcoholic beverages are provided or sold to a minor. (footnote omitted).

*Id.*

The appellate court in Boogie's held that there was no "affirmative acts" exception to statutory immunity and further that there was no requirement under the statute that the bartender be licensed. The permit holder was "Boogie's," therefore, Boogie's and its owner and employees were immune from tort liability as the provisions of La.R.S. 9:2800.1 applied. The supreme court denied writs in *Tregre*, 229 So.3d 927, and *Tregre*, 230 So.3d 208. At this writing, this case is the latest interpretation of the statutory immunity by our courts, with writs being denied on November 13, 2017.

The transcript of the trial court's oral reasons in this case demonstrate that the trial court clearly recognized that La.R.S. 9:2800.1 was applicable to the employee defendants. However, the trial court expressed concern about Paragon's purported "quota policy" for its slot machine servers that required them to serve a certain number of drinks per hour and the possible application of the duty/risk analysis for "affirmative acts" that may have caused Mr. David to become intoxicated. Plaintiff alleged that Ms. Martin was obligated to follow "casino policy" and intentionally "overserved" Mr. David, who was "obviously intoxicated." The uncontradicted video evidence shows that Ms. Martin served him at least one beer and, possibly, up to four beers between 5:45 p.m. when he approached Bar No. 2, until around 11:01 p.m., when she clocked out. Factually, she did not "overserve" Mr. David, who was in an auto accident eight hours after she clocked out at work and fifty minutes after

23

Mr. David left the casino, when he collided with Mr. Michael Zaunbrecher some seven to nine miles away on Highway One.

In his uncontradicted discovery deposition introduced in evidence, the Paragon Banquet Manager, Mr. Robertson, testified that the "quota system" referred to by the court only applies to the waitresses serving drinks while patrons are on the gaming floor, including non-alcoholic drinks, and not to bartenders such as Ms. Martin.

The issue of whether a "quota system" for the service of alcohol triggered the application of the duty/risk analysis to a casino (and by analogy, its employees) was also recently addressed by a panel of the fifth circuit in *Boomtown*, 62 So.3d 166. That case involved a wrongful death action against the Boomtown Casino alleging that the service of alcoholic beverages to Mr. Bourgeois was the "proximate and legal cause of his death" in a one car accident which occurred shortly after he left the casino. Mr. Bourgeois' blood alcohol level was .29%, and his intoxication was allegedly the cause of the accident at issue.

As in this case, the plaintiffs claimed that "Boomtown's alleged cocktail server policy, which plaintiffs alleged required servers to bring alcoholic drinks to customers every 20 to 30 minutes or face disciplinary action, including possible termination," amounted to independent, affirmative acts of negligence not covered by the statute. *Id*. at 168.

The court of appeal in *Boomtown* found that La.R.S. 9:2800.1 applied. Further the statute "eliminates the need for a duty/risk analysis," based on the following reasoning:

> On July 9, 2007, the date of plaintiff's accident, Boomtown possessed a valid alcohol permit and the decedent was of a lawful age to consume alcoholic beverages. The accident occurred off premises

24

and resulted from Mr. Bourgeois' own intoxication. As these facts are unequivocally established, Boomtown is immunized by this statute from tort liability. Since the legislature has for public policy reasons eliminated legal or "proximate cause" in a case of this type, Boomtown's act of serving alcohol is not the proximate cause of the decedent's death and absent this essential legal element, plaintiffs' case fails as a matter of law.

*Boomtown*, 62 So.3d at 171.

The appellate court in *Boomtown* also addressed the issue that the requirement that the cocktail waitresses serve a certain number of drinks each hour somehow constituted "force", which was an exception to statutory immunity under La.R.S. 9:2800.l(E). In other words, the policy of requiring "cocktail waitresses to serve customers every 20 to 30 minutes" somehow was forcing Boomtown customers to drink alcohol. *Boomtown*, 62 So.3d at 172.

As in this case, there was no testimony to support the plaintiffs' conclusion "that customers were forced to *accept an alcoholic drink* every 20 to 30 minutes or **were forced to drink one that was served.**" *Id.* (emphasis added). Thus, the court concluded that Mr. Bourgeois was not "forced" to consume alcohol. The court held that *Boomtown* was statutorily immune from liability under La.R.S. 9:2800.1 and affirmed the summary judgment in favor of the defendants.

Respondents in this case did not even allege that Mr. David was "forced" to drink alcohol. The uncontradicted facts in this case show that Mr. David was not "forced" to accept any alcohol or "drink one" that was served. We find that the record is clear that the "force" exception to the immunity provided by La.R.S. 9:2800.1 likewise does not apply in this case and agree with the reasoning in *Boomtown*. In short, there is no "casino exception" to the statutory immunity provided by La.R.S. 9:2800.1.

25

*Application Of The Training Of Employees and Handbooks*

Respondents also argue that Paragon's internal policies and Paragon's training materials establish an **individual duty on the part of the security officers to protect the public from intoxicated patrons.**

The employee defendants, Ponthieux and Ponthier, argue that training on alcohol awareness for trainee security personnel does not create a legal duty to guests off premises on the part of an individual employee protected by the statutory immunity of La.R.S. 9:2800.1. They argue that the legislature did not include any such exception in the statute, but instead, the Louisiana Alcohol and Tobacco Control (ATC) established the Responsible Vendor Program (RVP). The Responsible Vendor Program requires employers serving alcohol to create training materials, testing and to issue RVP cards to all servers handling alcohol. "Effective January 1, 2000, all vendors shall participate in the program." La.R.S. 26:939.

The RVP Guidelines are contained on the ATC public website and require that servers monitor behavioral signs of intoxication, and if they determine that there are signs of intoxication, including slurred speech, slow reactions, and impaired judgment, they are to arrange for a taxi, offer food or a non-alcoholic beverage. Paragon's guidelines were taken from the RVP Guidelines as confirmed in the deposition of Erin Chapman, Paragon's AAT trainer, and submitted into evidence in support of the employee defendants' motion for summary judgment. At the time of the encounter of both Mr. Ponthieux and Mr. Ponthier with Mr. David in the Paragon Casino in the early morning hours of July 11, 2013, both security guards were RVP cardholders, as required by La.R.S. 26:939.

26

Respondents have not been able to provide any jurisprudence that excludes security officers from the statutory immunity provided by La.R.S. 9:2800.1 as employees of alcohol vendors. In addition to *Tregre*, 224 So.3d 1234, and *Boomtown,* 62 So.3d 166, previously addressed in this opinion, this circuit, in *Roy*, 983 So.2d 975, extended La.R.S. 9:2800.1 statutory immunity to the **owner, manager, and bartender** of the defendant bar, and affirmed the summary judgment granted by the trial court. As in this case, plaintiffs/respondents argued that continuing to serve alcoholic beverages, after the 3:00 a.m. parish mandated closing time, to an obviously intoxicated person of a lawful age (Mr. Roy was twenty-one) and an obviously intoxicated person who was under the lawful age (Mr. Parsley was twenty), established by La.R.S. 14:93.11 and 14:93.12, was a violation of a state statute and a parish ordinance and thus defeated the statutory immunity provided by La.R.S. 9:2800.1.

Mr. Roy and Mr. Parsley were drinking at Kyrles bar, also located in Avoyelles Parish. Both were served more alcoholic beverages after they appeared intoxicated and after the parish closing time of 3:00 a.m. Both then left the bar in a vehicle owned and being driven by Mr. Roy and were involved in a one vehicle accident. Mr. Roy was killed, and Mr. Parsley was injured. Mr. Roy's parents sued Kyrles and Mr. Juneau, the manager of Kyrles, claiming that the bartenders overserved drinks to the two young men and **employees of Kyrles** allowed them to leave the bar and drive away, knowing they were intoxicated.

Writing for the court, Judge Saunders addressed these issues and stated:

> For La.R.S. 9:2800.1 to apply: (1) the bar owner must hold a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes; (2) the bar owner or its personnel served alcoholic beverages to a person over the lawful drinking age; (3) the purchaser

suffered and/or caused another to suffer an injury off the bar's premises; and (4) the injury was caused by the purchaser's intoxication. *Zapata v. Cormier*, 02-1801 (La. App. 1 Cir. 6/27/03), 858 So.2d 601.

Here, all four elements are met. Kyrles established that it is licensed by both the state and the parish to serve alcoholic beverages on its premises. Roy was over the legal drinking age of twenty-one established by La.R.S. 14:93.11 and 14:92.12. Plaintiffs allege that Roy and Parsley were injured off Kyrles' premises. Those injuries suffered were as a result of Roy driving the vehicle while intoxicated.

Plaintiffs argue that La.R.S. [9:]2800.1 does not apply to the case at bar since defendants allegedly sold alcoholic beverages to Roy after he became intoxicated and after the parish-mandated closing time. Plaintiffs contend that these sales were made in violation of state and parish law and, thus, unlawful. As such, plaintiffs conclude that since the sales were unlawful, Roy cannot be of lawful age to make these purchases and, therefore, La.R.S. 9:2800.1 does not apply.

This argument lacks merit as it is contrary to the plain text of La.R.S. 9:2800.1. The phrase "over the age for the lawful purchase thereof" describes the person whom need be served alcohol in order for the immunity to apply. The statute requires compliance with only two laws: the one requiring a permit under Title 26 of the Revised Statutes, and the one establishing this state's legal drinking age. It does not require the bar to comply with every statute, regulation, or ordinance governing the sale or service of alcohol.

Moreover, this court, in *Bertrand v. Kratzer's Country Mart*, 563 So.2d 1302 (La.App. 3 Cir.), *writ denied*, 569 So.2d 959 (La.1990), held that a defendant's service of alcohol to an intoxicated person does not make a defendant liable for damages resulting from an accident caused by the person's intoxication. The result in *Bertrand* was based upon our supreme court's precedent set in *Thrasher v. Leggett*, 373 So.2d 494 (La.1979), and *Saunders v. Hercules Sheet Metal, Inc.*, 385 So.2d 772 (La.1980*)*. The enactment of La.R.S. 9:2800.1 is, in effect, a codification of these cases and it encompasses the observance that the state has a clear goal "in narrowing the scope of liability of tavern keepers and social hosts and in allocating consequences of irresponsible drinking to the person doing the drinking." *Schulker v. Roberson*, 91-1228 (La.App. 3 Cir. 6/5/96), 676 So.2d 684, 688.

Accordingly, we find that the trial court correctly granted defendants' motion for summary judgment. Plaintiffs cannot prove an essential element to its theory of recovery, that the defendants' conduct was the legal cause of their damages, due to the statutory immunity granted to the defendant under La.R.S. 9:2800.1. As such, we affirm the trial court's judgment.

*Roy*, 983 So.2d at 979-80.

The first circuit noted in *Morris*, 147 So.3d at 1124: "We find the statutory language of [La.R.S.] 9:2800.1 to be clear and unambiguous, leaving no room for interpretation beyond the ordinary meaning of the words employed." *See also Comeaux v. Lemmons*, 10-651 (La.App. 3 Cir. 12/8/10) (unpublished opinion); *Zapata*, 858 So.2d 601; and *Alvarenga*, 818 So.2d 1017.

We find that there is no exception created by the statute for alleged independent negligence of employees of the permit holder, i.e. security guards, bartenders, and floor waitresses, who somehow allegedly violate in house guidelines or state statutes as to serving alcohol or handling intoxicated patrons.

Moreover, as previously stated, La.R.S. 9:2800.1(B) (emphasis added) clearly states:

> **B.     Notwithstanding any other law to the contrary, no person holding a permit under either Chapter 1 or Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950, nor any agent, servant, or employee of such a person, who sells or serves intoxicating beverages of either high or low alcoholic content to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served.**

The duties imposed on permit holders and their employees under Title 26 of the revised statutes do have consequences, such as the loss of the permit to sell alcohol pursuant to La.R.S. 26:90, or loss of a RVP card to those serving alcohol under La.R.S. 26:935. But as held in *Tregre* and *Roy*, those statutes do not in any way limit statutory immunity under La.R.S. 9:2800.1.

29

Moreover, the uncontradicted video footage and testimony in evidence in support of the employee defendants' motion for summary judgment directly contradicts the mere allegations made in Respondents' petition. Even if the circumstances did show that Mr. David was overserved by Ms. Martin, or other casino employees, and forcibly ejected from the Paragon Casino and escorted to his vehicle by the two security guards, Mr. Ponthier and Mr. Ponthieux, as alleged by Respondents with no evidence to support their claims, based on the clear wording of La.R.S. 9:2800.1 and the jurisprudence noted above, the employee defendants would still be entitled to the statutory immunity provided by the statute. The Louisiana Legislature and cases interpreting La.R.S. 9:2800.1 have made it clear that, "Notwithstanding any law to the contrary," the responsibility for intoxication falls squarely on the shoulders of the intoxicated individual, in this case Mr. David. La.R.S. 9:2800.1(B).

For the foregoing reasons we find that the trial court erred as a matter of law in failing to grant summary judgment pursuant to La.R.S. 9:2800.1 and afford statutory immunity to the employee defendants, Ms. Martin, Mr. Ponthier, and Mr. Ponthieux.

## CONCLUSION

We reverse the trial court's denial of the motion for summary judgment and enter summary judgment in favor of the Defendants/Relators, Marissa Martin, Nathan Ponthier, and Jeremy Ponthieux, dismissing the claims of Respondents, Zachary Zaunbrecher, individually and on behalf of his deceased father, Michael Blake Zaunbrecher, the Estate of Leo David, and Liberty Mutual Insurance Company with prejudice at their cost. All costs of the supervisory writs are assessed

to Respondents, Zachary Zaunbrecher, individually and on behalf of his deceased father, Michael Blake Zaunbrecher, the Estate of Leo David, and Liberty Mutual Insurance Company.

**MOTION TO STRIKE WRIT APPLICATION OF MARISSA MARTIN DENIED; MOTION TO STRIKE EXHIBITS D AND I OF PLAINTIFFS' OPPOSITION GRANTED; WRIT GRANTED AND MADE PEREMPTORY.**

**Cooks, J. concurs.**

I concur to write, after viewing the video evidence as urged to do by Plaintiff's counsel, it is apparent in all of the video footage presented that counsel for plaintiff's characterization of Mr. David's condition in the casino, and of his departure from the casino property an hour before the fatal accident, are wholly unsupportable. It is clear Mr. David was not escorted to his vehicle but can clearly be seen leaving the casino building of his own accord, unassisted by anyone. He is seen walking quite a distance directly to his vehicle and driving away in a normal manner.